Ella E. Murphy, Appellee, v. Elizabeth C. King, Appellant.

Gen. No. 38,289.

Opinion filed February 19, 1936.

MILLER, GORHAM, WALES & ADAMS, of Chicago, for appellant.

JOSEPH D. RYAN and LOUIS P. MILLER, both of Chicago, for appellee.

MR. JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

This is an appeal from the superior court of Cook county from a personal injury judgment entered in favor of plaintiff in the sum of $10,000. The case was tried before a court and jury.

The plaintiff Ella E. Murphy, a guest of the defendant Elizabeth C. King, was riding in an automobile with the defendant at the time of the accident which resulted in the injury sustained by plaintiff.

The declaration consisted of four counts:

The first count alleges that the defendant wilfully and wantonly drove the automobile so that it collided with another automobile, thus causing the injury to the plaintiff who was her guest;

The second alleges that the defendant wilfully and wantonly drove her automobile westward in 71st street through a closely built-up residence portion of Chicago at a rate of speed in excess of 20 miles an hour;

The third count alleges that the defendant failed to keep a lookout as she approached street intersections and that she wilfully and wantonly drove against another automobile being driven in a northerly direction along Morgan street, at which intersection the collision occurred;

The fourth count alleges that Morgan street was a through street, but that defendant, without bringing her automobile to a full stop, in violation of a city ordinance, wilfully and wantonly drove westward on 71st street and upon Morgan street, thereby colliding with another automobile which caused the injuries complained of.

The plea was the general issue.

Plaintiff testified that she and the defendant were friends; that defendant had invited her to go for a ride in her automobile in the country; that she had been out with Miss King prior to that time four or five times; that she had never driven a car herself; that defendant drove the car north to 66th street and then west to Normal boulevard and then drove south to 71st street; that they were going between 30 and 35 miles an hour; that when defendant's automobile reached Halsted street she shot across the street and that she, the plaintiff, said: "My God, there was a car line there"; that when they got on the other side of the street defendant said, "I wasn't thinking about it; I'm sorry"; that she slowed down for a block or so and plaintiff states that she was frightened; that when they approached Morgan street, which was about two blocks further, plaintiff further testified that she knew there was a stop sign and that she saw that defendant was not going to stop and she said to the defendant, "Stop, Elizabeth, this is a through street"; that defendant did not answer her and that she was going 30 or 35 miles an hour and continued to cross the street; that defendant did not slow down at any time; that the plaintiff saw the other car before the accident happened; that it was coming north on Morgan street on the south side of 71st street and was almost to the curb at 71st street; that there is a stop sign about 20 feet east of Morgan street and it is a shield sign which said "Stop" and then a red light "Through Street";

that at this point there was a narrow vacant lot on the northeast corner but the other three corners are built up with buildings. Plaintiff further testified to the effect that there was no obstruction on the side of the street which would prevent one from seeing the stop sign; that there were no cars parked there; that defendant did not stop or slow down when they approached Morgan street; that she, plaintiff, saw the boy who was driving north on Morgan street coming and then everything was black and that she was in pain and became unconscious; that the next thing she knew she was in the hospital; that she had stitches taken in her head and eye; that her hip was broken and that she had two pelvic breaks; that her leg was broken and practically dislocated; that her hip was split open and her right leg was lying open; that her two legs were hurt; that she could not walk for six months; that they put some traction on her broken leg and that she had two steel bandages under her pelvis; that they put a cast under her hip and up under her ribs; that when they took the cast off she could not stand and had to have other treatments; that she was compelled to use crutches and it was not until the following May that she was able to use them; that since leaving the hospital she has been under the care of a physician and has had therapeutic treatments; that her left leg is two inches short and that she has pains in her back and that she cannot rest her weight on one foot; that her knee and ankle get swollen; that the muscles "were dead" and that a nurse massaged them.

The testimony of several doctors showed that plaintiff suffered from and still suffers from physical injury and that the conditions are permanent and she will always remain crippled.

The defendant testified that she did not know exactly how fast they were going on 71st street; that she did

not look at the speedometer; that she was going not less than eight miles and not more than twelve miles an hour and that before they approached the street she was probably going a bit faster; that as she approached the street she slowed down and shifted to second speed; that as she went into the intersection she saw a car to her right and one to her left; that she could not say how many feet away those cars were, but they were at least a block from the intersection; that she proceeded to go on in second speed but did not pick up speed at all; that they had practically crossed the center of the drive when they were struck; that she had no recollection of plaintiff saying "My God, this is a stop street"; that plaintiff did not request her to stop or anything similar to that; that up until the accident she and the plaintiff were most friendly.

Other witnesses who were disinterested testified that defendant was going 35 to 40 miles an hour when she reached the intersection and did not slow up; that it was a built-up neighborhood and that she did not stop before entering Morgan street.

It is first contended by the defendant that the finding that the defendant was guilty of wilful and wanton conduct is not supported by the evidence. We think there was ample evidence to justify submitting the case to the jury.

It is next contended that the violation of an ordinance does not constitute wilful and wanton misconduct and that the failure to stop at a through street is not wanton conduct and that the ultimate issue in determining whether there was wilful and wanton misconduct on the part of the driver is the driver's state of mind.

An almost parallel case, where the driver of an automobile injured another, is that of *Streeter v. Humrichouse,* 357 Ill. 234. In that case a Dodge automobile

driven by the defendant was traveling at 35 miles an hour and went over the crossing and struck the switchman who was riding on the switch engine causing his death. The court in its opinion said:

"With reference to the first contention, the rule is that in passing upon a motion to direct a verdict, if, when all the evidence is considered, with all reasonable inferences drawn from it in its aspect most favorable to the party against whom the motion is directed, there is a total failure to prove one or more necessary elements of the case, the motion should be allowed. (*Williams v. Consumers Co.*, 352 Ill. 51, and cases there cited.) Ill-will is not a necessary element of a wanton act. To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal wilfulness, *Jeaneary v. Chicago and Interurban Traction Co.*, 306 Ill. 392.''

Here the evidence shows that the defendant drove an automobile at an excessive rate of speed and after she was cautioned of the imminent danger passed the signs erected by the city commanding her to stop. Even in the face of the protest of her passenger, she not only refused to obey the law, but also did not heed the warning of her friend.

In 2 Thompson on Negligence, 1264, section 53, p. 606, which is cited with approval in *Lake Shore & M. S. Ry. Co. v. Bodemer,* 139 Ill. 596, it was said: "What degree of negligence the law considers equiva-

lent to a wilful or wanton act is as hard to define as negligence itself, and in the nature of things, is so dependent upon the particular circumstances of each case as not to be susceptible of general statement.''

In *Bernier v. Illinois Cent. R. Co.,* 296 Ill. 464, the court at p. 470, says: ''It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a wilful or wanton act. Whether an act is wilful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of wilfulness or wantonness.''

We do not believe that in cases of this kind that, to be guilty of wilful and wanton negligence as defined in the law, one must necessarily be in the state of mind of a person who has a feeling of ill-will against the injured party and who intends to commit the injury complained of. A conscious indifference to consequences which is shown by an intentional disregard of a known duty necessary to the safety of the person or property of another would come within the definition of wilful or wanton negligence.

In *Walldren Express & Van Co. v. Krug,* 291 Ill. 472, the court at page 476 said: ''Whether the negligent conduct of a defendant which has resulted in injury to another amounted to wantonness is a question of fact to be determined by the jury, if there is any evidence in the record fairly tending to show such a gross want of care as indicates a wilful disregard of consequences or a willingness to inflict injury. (*Lake Shore and Michigan Southern Railway Co. v. Bodemer, supra.*) An intentional disregard of a known duty necessary to the safety of the person or property of another and an entire absence of care for the life, person or property of others, such as exhibits a conscious

indifference to consequences, make a case of constructive or legal wilfulness such as charges the person whose duty it was to exercise care with the consequences of a wilful injury. (1 Thompson on Negligence, secs. 20, 22.) . . . that they saw him but did not sound the horn, slacken speed or make any effort to avoid the collision until just before it occurred, when the machine swerved slightly to the left; that with full knowledge that a collision was imminent they deliberately failed to make any effort to avert it and avoid injuring the plaintiff. In this view of the facts the jury might well have concluded that the conduct of the driver showed that conscious indifference to consequences and deliberate purpose not to exercise any care, however apparently necessary for the safety of the boy, which charges his employer with the consequences of a wilful injury.''

In the case of *Pittsburgh, C., C. & St. L. Ry. Co. v. Kinnare,* 203 Ill. 388, cited by counsel for defendant in support of his statement that the mere violation of an ordinance requiring a driver of an automobile to stop, does not prove wilful and wanton negligence, the Supreme Court in that case said: ''There are three counts in the amended declaration, and neither of them alleges that deceased exercised any care for his own safety, but they are based upon the theory that he was a trespasser upon the defendant's right of way, and that his death was caused by wanton and wilful acts of the defendant. They allege that he was in such close proximity to the track that the engine could not be run past him without striking him, and that the defendant knew of his perilous position and the danger he was in, and ran the engine against him and killed him. Under the allegations of the declaration defendant would not be liable for mere negligence, and could only be charged with liability in case of a wanton or wilful injury. But the injury charged is of that

character. The first count charges that the engine was backed without giving any warning of its approach by ringing a bell, as required by an ordinance of the city of Chicago, and it has been held that the mere fact that a train was run in a manner prohibited by an ordinance will not furnish a sufficient reason for holding an injury to be wanton or wilful. (*Illinois Central Railroad Co. v. Hetherington,* 83 Ill. 510; *Blanchard v. Lake Shore and Michigan Southern Railway Co.,* 126 id. 416.) But the count contains the additional averments that the defendant knew the perilous position of the deceased, and that the backing of the engine without the required warning was wilful and wanton. The second count charges the wanton and wilful starting and backing of the engine without giving any warning or signal, and running against the deceased, knowing his dangerous position. The third count charges that after the engineer saw the deceased and saw him standing in a perilous position he could have brought the engine under control and stopped it, but failed to do so and ran against him. We think the declaration sufficient to support the judgment.''

In the instant case any and all of the series of acts charged in the different counts in the declaration were alleged could have been done with an apparent disregard of a known duty and absence of care ''such as exhibits a conscious indifference to consequences.'' It may well be that a segregated single act, such as passing a stop light, excessive speed or the non-observance of a through street, if taken by itself, would not show wilfulness or wantonness, but when considered collectively under the circumstances presented, together with the result flowing therefrom, these acts show such a conscious indifference as to consequences as to render defendant's act wilful and wanton. The definitions of wilfulness and wantonness in the decisions in various other States do not differ materially from the lan-

guage used by our own Supreme Court and no advantage would be had in quoting them at length.

It is next contended that error was made in instructing the jury regarding the various counts in the declaration and in using the words of the declaration as contained in the various counts in the said instructions. We do not believe this was error. In faot, we think it proper practice to have the court define to the jury the issues made by the declarations and to do it by way of instructions.

In the case of *Central Ry. Co. v. Bannister,* 195 Ill. 48, the court in considering the instruction which told the jury that if they believed from the evidence that the defendant was guilty of negligence as alleged in the declaration or some count thereof, they should find for the plaintiff, said in its opinion: "Had the instructions copied the allegations no objection could have been urged to them."

In the case of *West Chicago St. R. Co. v. Lieserowitz,* 197 Ill. 607, at page 610, the court said:

"The first instruction given for the appellee, in addition to the general objection already stated, is further objected to upon the alleged ground that it is a recapitulation, hypothetically stated, of the material facts in the case, and that there was inserted in it matter, which had no tendency whatever to prove appellee's claim. In our opinion the instruction is not justly subject to this criticism. The instruction first states the claim made by the appellee, as stated in her declaration. This feature of the instruction is certainly unobjectionable under the decisions of this court. An instruction, telling the jury that, if they believe from the evidence the plaintiff has proved his or her case, as laid in his or her declaration, they will find the issues for the plaintiff, has been held to be unobjectionable. (*Mt. Olive Coal Co. v. Rademacher,* 190 Ill. 538, and cases cited.) In view of the holding,

that an instruction may refer to the case alleged in the declaration, and as a corollary therefrom, this court has recently said: 'Had the instructions copied the allegations, no objection could have been urged to them.' (*Central Railway Co. v. Bannister,* 195 Ill. 48.)'' This position has been upheld in many cases. *North Chicago St. R. Co. v. Polkey,* 203 Ill. 225; *Pittsburgh, C., C. & St. L. Ry. Co. v. Kinnare,* 203 Ill. 388; *Krieger v. Aurora E. & C. R. Co.,* 242 Ill. 544.

Particular emphasis is laid upon the claim of the defendant that error was committed in the instructions to the jury, especially the last paragraph where, after explaining the various counts and the plea of the defendant that she denied that she was guilty of wilful and wanton conduct as charged in plaintiff's declaration and each and every count thereof, the court concluded:

''These are the issues that you are to decide. It is proper for the plaintiff to join claims of this kind in the same suit, but before the plaintiff can recover she must prove one or more of the counts of her declaration by a preponderance or greater weight of the evidence. It is not necessary for recovery on the part of the plaintiff that she prove all of the said counts of her declaration. If she proves any one or more of them, by a preponderance or greater weight of the evidence, then you should find the defendant guilty.''

From a reading of the above paragraph we do not think it is subject to the criticism that the defendant has leveled at it. After explaining the four different counts and the charges that they contained, we think it is quite plain that the jury understood that the separate counts were based on different acts of the defendant or her failure to perform duties as detailed in the said various counts which, if they found from a preponderance of the evidence was done wilfully and

wantonly as so alleged, would be sufficient to entitle the plaintiff to recover. In addition to this the jury were fully instructed as to the meaning of "wilful and wanton" conduct as well as having had explained to them by proper instructions their duty in all its various phases. The instructions refused, as tendered by defendant, were properly refused. We must also presume that juries possess ordinary intelligence and these instructions were plain enough not to mislead the average man. We feel that no error was committed in the giving of these instructions and that the evidence was sufficient to justify the jury in finding for the plaintiff. There is no error appearing in this record which justifies a reversal of the judgment.

For the reasons herein given the judgment of the superior court is affirmed.

*Judgment affirmed.*

HALL, P. J., and HEBEL, J., concur.