### Virginia Barmann, Appellee, v. Ralph McConachie, Appellant.

Opinion filed March, 4, 1937.

L. R. Stewart and P. K. Johnson, of Belleville, for appellant.

William H. Schuwerk, of Chester, for appellee.

Mr. Justice Murphy delivered the opinion of the court.

Plaintiff brought this action to recover damages for personal injuries alleged to have been caused by defendant's wilful and wanton negligence in the operation of his automobile at a time when plaintiff was riding with him as his guest.

The first three paragraphs of count one, all of which are adopted as similar numbered paragraphs in the other four counts, allege in substance that on the night of October 4, 1935, at about 12:30 o'clock defendant was driving his automobile on the paved highway north of Sparta and that plaintiff riding as his guest was sitting in the front seat and went to sleep and that defendant knew she was asleep. The first count alleges that the defendant being tired, exhausted and sleepy knew and was conscious of the fact that he was about to fall asleep and being conscious that if he did fall asleep while he was operating his automobile it would probably result in injury to others, particularly the plaintiff, and with an entire absence of care for the life, person or property of others, and with a conscious indifference to the surrounding circumstances and conditions and with wilful disregard of the consequences wilfully and wantonly drove his automobile at a speed of approximately 40 miles per hour and that while so operating the automobile the defendant fell asleep, thereby losing control of his automobile and injuring

plaintiff. The second count alleges that it was the duty of defendant not to wantonly and wilfully injure the plaintiff, yet in disregard of the duty he wilfully and wantonly drove his automobile at a speed of 40 miles per hour at a time he knew he was drowsy, sleepy and about to fall asleep and did fall asleep and lost control of his automobile resulting in injury to plaintiff. The third and fourth counts are similar in substance to the first two counts and the fifth count charges general wilful and wanton negligence in the operation of the automobile. Defendant answered denying all charges of wilful and wanton negligence.

The case was tried with a jury resulting in a verdict for plaintiff for $6,500. After a remittitur of $1,500 was filed, judgment was entered for $5,000.

The court's rulings on the defendant's motion for a directed verdict and new trial present the question whether or not the defendant was guilty of wilful and wanton misconduct within the meaning of the "Guest" section of the Motor Vehicle Law, Ill. State Bar Stats. 1935, ch. 95a, ¶ 47(5); Jones Ill. Stats. Ann. 85.064(1).

The facts are not in dispute. Plaintiff called defendant for cross-examination under the provisions of section 60 of the Civil Practice Act, Ill. State Bar Stats. 1935, ch. 110, ¶ 188; Jones Ill. Stats. Ann. 104.060. His testimony is the only evidence bearing upon the cause of the accident and the alleged negligence.

Defendant, a young man age 24, and plaintiff, a young lady age 20, both resided in Sparta and on the evening of the accident he invited her to accompany him to a dance to be held at a tavern in Chester, a distance of about 20 miles from Sparta. They arrived at Chester about eight o'clock, each had two drinks of whisky soon after they arrived but did not drink any more that evening. They danced until about 12 o'clock and started towards Sparta. On the way from Chester to Sparta they concluded to go to Moffat's restaurant

which was six or seven miles on the other side, that is, north, of Sparta. Soon after this arrangement was made plaintiff told defendant she was sleepy and defendant told her to go to sleep and he would drive. Plaintiff awakened at Sparta but soon fell asleep and remained asleep until the accident which occurred about four miles north of Sparta and two and one-half miles from Moffat's. Defendant testified as follows: "It was about a quarter to one when we left Sparta going to Moffat's. I was sober and had all my mental faculties. I drove to Sparta. Had not driven off the highway and was able to control my car to Sparta. I realized I was sleepy. First realized this about four miles out of Sparta. I did not inform Miss Barmann that I was sleepy. At that time I was driving about forty miles an hour and continued to operate at that speed. I felt at that time as I ordinarily feel when I am about to go to sleep. At that time I would say I was between two and two and a half miles from this restaurant, and I continued driving toward the restaurant. Then the first thing I knew was the crash. After the crash my car was out in the field along side of a telephone post." When called in his own behalf he testified substantially as above and added, "When I became sleepy I judged we were about four miles north of town and between a half a mile and a mile from the place of the accident. I kept driving because I thought I could make the rest of the way. I did not intend to go to sleep. I intended to go to Moffat's." On cross-examination he testified that he thought he could make it to Moffat's before he went to sleep, that he knew he could have a wreck but that he thought he could get to Moffat's where he could get coffee and something to eat.

Plaintiff testified that she went to sleep after they left Chester, awakened at a stop sign in Sparta, asked defendant where they were and he told her and she again fell asleep and knew nothing until the accident.

The evidence discloses that the road was level for some distance south of the scene of the accident, that defendant's automobile crossed the pavement to the driver's left, crashed through a wire fence breaking down two or three posts and coming to a stop against a telephone pole. It had traveled 138 feet from where it left the pavement to the place where it stopped.

Sec. 42–1, par. 47(5), ch. 95a, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 85.064(1) (par. b, sec. 58, ch. 95½, Smith Hurd) provides that no person riding as a guest shall have a cause of action for damages against the driver of an automobile unless such accident shall have been caused by the wilful and wanton misconduct of the driver and unless such conduct contributed to the injury.

In *Walldren Express & Van Co. v. Krug*, 291 Ill. 472, 478, it was said, "The words 'wanton,' 'wantonly' and 'wantonness,' 'willful,' 'willfully' and 'willfulness' have been used to express the same thing."

In *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390, it was said, "Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton. In such a case there may be an actual intent to injure, or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended."

In *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, the court said, "Ill-will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of

negligence the law considers equivalent to a willful or wanton act. Whether an act is willful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of willfulness or wantonness.''

In *Murphy v. King,* 284 Ill. App. 74, it was said, ''We do not believe that in cases of this kind, that, to be guilty of willful and wanton negligence as defined in the law, one must necessarily be in the state of mind of a person who has a feeling of ill will against the injured party and who intends to commit the injury complained of. A conscious indifference to consequences which is shown by an intentional disregard of a known duty necessary to the safety of the person or property of another would come within the definition of willful and wanton negligence.''

Defendant says he knew that plaintiff was asleep and that he was aware of the possibilities of an accident if he went to sleep while driving. With a knowledge of these things he becomes conscious of the fact that he is sleepy. He is then driving at 40 miles per hour. He undertakes the struggle with himself of keeping awake until he can reach Moffat's, a distance of two or three miles. Of course in so doing he did not intend that plaintiff should be injured by reason of his act but his conduct showed such an intentional disregard of the duty that rested upon him to exercise care and such a conscious indifference to the consequences that might follow from his act that the jury could readily find him guilty of wilful and wanton misconduct.

Defendant cites and relies upon *Armstrong v. Cook,* 250 Mich. 180, where the driver fainted while driving his car, and *Kaplan v. Kaplan,* 213 Iowa 646, where a man driving a car on a country road facing the sun on a warm day, fell asleep but did not know that he was about to go to sleep. In those cases it was held that the

driver was not guilty of wilful and wanton negligence. Those cases are distinguishable from the case at bar in that the defendant in this case was conscious of the fact that he was sleepy and yet continued to drive some distance before he went to sleep and the accident occurred.

In *Manser v. Eder,* 263 Mich. 107, 248 N. W. 563, where the guest had aroused defendant after he had fallen asleep and driven into a safety zone and then went back to sleep and drove into another safety zone, it was held that he was guilty of wilful and wanton misconduct.

In *Potz v. Williams,* 113 Conn. 278, 155 Atl. 211, a defendant was held to be guilty of reckless misconduct as defined by statute where he had been driving alone most of the day, was tired and yawned a good deal and then about midnight went to sleep and let his car swerve from the road.

In *Hardgrove v. Bade,* 190 Minn. 523, where the driver after driving all night for over 300 miles and after refusing several times to permit his lady guest to drive, it was held to be a question for the jury to say whether defendant was guilty of gross negligence.

Defendant seriously contends that defendant's failure to judge correctly of his ability to resist sleep was an error of judgment and that it will not support a finding of wilful and wanton negligence. Defendant's act did not arise from an error of judgment. It came about by reason of his failure to exercise judgment. He permitted himself to go to sleep while driving and an act of omission may be made the basis of wilful and wanton negligence, the same as an act of commission.

The finding of the jury that the defendant was guilty of wilful and wanton negligence is supported by the law and evidence.

Defendant contends that plaintiff's act in willingly going with the defendant past her home in Sparta to Moffat's and in going to sleep was the proximate cause

of her injury. Under the evidence in this case that question was for the jury. *Molloy v. Chicago Rapid Transit Co.*, 335 Ill. 164.

In defendant's brief and argument he says that it was error to give any of plaintiff's instructions without pointing out which ones and in what respect they were wrong. Under the heading Defendant's Instruction, he states that it was error to refuse any of his instructions. There were four refused but he does not point out in what particular they are applicable.

Under these conditions, instructions need not be reviewed. *Pollock v. Pollock*, 328 Ill. 179; *Duggan v. Ryan*, 211 Ill. 133.

Finding no reversible error, the judgment of the circuit court is affirmed.

*Judgment affirmed.*