George M. Marks, Appellee, v. Eli Marks, Appellant.

Gen. No. 41,310.

Opinion filed January 22, 1941.

JOHN A. BLOOMINGSTON, of Chicago, for appellant.

HARRY S. GREENSTEIN and CHARLES C. & RICHARD M. SPENCER, both of Chicago, for appellee.

Mr. Justice Denis E. Sullivan delivered the opinion of the court.

Defendant Eli Marks brings this appeal from a judgment entered in the superior court in favor of plaintiff George M. Marks, his brother, for $2,500, as damages for personal injuries which plaintiff alleges he received because of negligence on the part of defendant.

The first count of the complaint charges negligence only in the management and operation of the automobile by the defendant; that said automobile was driven carelessly, recklessly and negligently, contrary to the provisions of the statute.

The second count alleges that the defendant wilfully, wantonly and maliciously drove his automobile at a speed in excess of 35 miles an hour, while defendant was asleep, stating: ''While the said defendant was without conscious possession of his faculties and was then and there asleep, and that by means and in consequence of said wanton, willful and malicious misconduct in that respect, the defendant lost control of his said automobile.''

Plaintiff contends that he went on an automobile trip with his brother, defendant herein, and that both were awake for a longer time than the normal period of wakefulness; that defendant fell asleep and that as a consequence the plaintiff was injured; that such conduct was wilful, wanton and malicious.

Defendant contends that there was no wilful, wanton and malicious misconduct, but that if such action constituted wilful and wanton misconduct that the plaintiff was equally guilty of the same misconduct.

The evidence shows that the accident occurred on May 7, 1936, when the plaintiff who was 34 years old and a salesman, was returning to Chicago from Detroit, Michigan, where he had made an automobile trip with his brother Eli Marks, the defendant.

The evidence further shows that the two brothers left Chicago on May 5, 1936, about 10 o'clock in the evening; that when they reached South Haven, Michigan it was about 1:30 a. m. and they slept in a hotel there and continued on their trip about 8 hours later, or 9:30 a. m.; that they took turns driving and arrived at Detroit, Michigan, about noon; that defendant transacted some business and they went to a movie; that they left Detroit that afternoon about 5:00 or 5:30 o'clock; that the defendant drove until they reached South Haven about 2:30 the next morning, May 7th; that before reaching South Haven, defendant was arrested for speeding; that after they had left Detroit, about 9:30 p. m. plaintiff suggested that they stop for the night and get up early in the morning and continue; that defendant objected to that plan as he said he had certain things he wanted to do, in Chicago, so they continued on with defendant driving and after he had driven a short distance he was going around a curve at 70 or 75 miles an hour; that plaintiff then took the wheel as it was a very dangerous curve, and continued to drive to 147th street and Cicero avenue in Chicago, when they ran out of gasoline; that it was then about 5 a. m.

The evidence further shows that they walked to a gasoline station and waited for the attendant to open it and plaintiff bought a gallon of gasoline; that at this point they changed drivers and defendant took the wheel and started north on Cicero avenue; that soon after leaving 147th street and Cicero avenue plaintiff fell asleep, as he stated the last thing he remembered was passing 140th street, until he regained consciousness in a hospital on the evening of May 7th. Defendant stated that they left the gasoline station at 147th street and Cicero avenue and that his brother, plaintiff herein, was asleep and that the next thing he knew he awakened in a hospital.

The gas station attendant who was located at 147th street and Cicero avenue stated that he remembered these gentlemen coming into the gasoline station to purchase some gasoline; that one of them said in a low voice, "I want some gasoline" and one of them said, "I am tired and sleepy"; that he asked them where they came from and they said they had come from Detroit and had not had much rest; that he, the attendant, told them that they had better "watch their step"; that they got into the automobile and departed and that they appeared tired and sleepy.

There does not appear to be any dispute as to the facts in this case. As to the law, nearly all that has been said on this subject is contained in the case of *Barmann v. McConachie*, 289 Ill. App. 196, wherein Mr. Justice MURPHY, now of the Supreme Court, in his opinion sets forth and distinguishes the various cases on this subject. In that case the defendant, a young man 24 years old, and the plaintiff, a young woman aged 20, both of whom resided in Sparta, drove to a dance to be held at a tavern in Chester, about 20 miles from Sparta. They arrived at Chester about eight o'clock and each had two drinks of whisky soon after they arrived, but did not drink any more that evening. They danced until about 12 o'clock and started towards Sparta. On the way from Chester to Sparta they concluded to go to Moffat's restaurant which was 6 or 7 miles north of Sparta. Soon after this arrangement was made plaintiff told defendant she was sleepy and defendant told her to go to sleep and he would drive. Plaintiff awakened at Sparta, but soon fell asleep and remained asleep until the accident occurred about 4 miles north of Sparta and 2½ miles from Moffat's. Defendant testified as follows: "'It was about a quarter to one when we left Sparta going to Moffat's. I was sober and had all my mental faculties. I drove to Sparta. Had not driven off the highway and was

able to control my car to Sparta. I realized I was sleepy. First realized this about four miles out of Sparta. I did not inform Miss Barmann that I was sleepy. At that time I was driving about forty miles an hour and continued to operate at that speed. I felt at that time as I ordinarily feel when I am about to go to sleep. At that time I would say I was between two and two and a half miles from this restaurant, and I continued driving toward the restaurant. Then the first thing I knew was the crash. After the crash my car was out in the field along side of a telephone post.' When called in his own behalf he testified substantially as above and added, 'When I became sleepy I judged we were about four miles north of town and between a half a mile and a mile from the place of the accident. I kept driving because I thought I could make the rest of the way. I did not intend to go to sleep. I intended to go to Moffat's.' On cross-examination he testified that he thought he could make it to Moffat's before he went to sleep, that he knew he could have a wreck but that he thought he could get to Moffat's where he could get coffee and something to eat.'' Continuing the opinion states:

''Plaintiff testified that she went to sleep after they left Chester, awakened at a stop sign in Sparta, asked defendant where they were and he told her and she again fell asleep and knew nothing until the accident.

''The evidence discloses that the road was level for some distance south of the scene of the accident, that defendant's automobile crossed the pavement to the driver's left, crashed through a wire fence breaking down two or three posts and coming to a stop against a telephone pole. It had traveled 138 feet from where it left the pavement to the place where it stopped.

''Sec. 42–1, par. 47 (5), ch. 95a, Ill. State Bar Stats. 1935; Jones Ill. Stats. Ann. 85.064 (1) (par b, sec. 58, ch. 95½, Smith Hurd) provides that no person riding as a guest shall have a cause of action for damages

against the driver of an automobile unless such accident shall have been caused by the willful and wanton misconduct of the driver and unless such conduct contributed to the injury.

"In *Walldren Express & Van Co. v. Krug*, 291 Ill. 472, 478, it was said, 'The words "wanton," "wantonly" and "wantonness," "willful," "willfully" and "willfulness" have been used to express the same thing.'

"In *Chicago City Ry. Co. v. Jordan*, 215 Ill. 390, it was said, 'Where there is a particular intention to injure, or a degree of willful or wanton recklessness which authorizes a presumption of an intention to injure generally, the act ceases to be merely negligent and becomes willful or wanton. In such a case there may be an actual intent to injure, or such a conscious or intentional disregard of the rights of others as to warrant a conclusion that an injury was intended.'

"In *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, the court said, 'Ill-will is not a necessary element of a wanton act. To constitute a wanton act the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury. It is difficult, if not impossible, to lay down a rule of general application by which we may determine what degree of negligence the law considers equivalent to a willful or wanton act. Whether an act is willful or wanton is greatly dependent upon the particular circumstances of each case. Where the omission to exercise care is so gross that it shows a lack of regard for the safety of others it will justify the presumption of willfulness or wantonness.' "

In *Murphy v. King*, 284 Ill. App. 74, defendant had invited a lady friend to ride as her guest in her automobile and, while driving on a street in Chicago, she

drove through a red light, disregarded a sign marked "through street" and her automobile was hit at an intersection by a car approaching from the side and her guest was injured. In *Barmann v. McConachie, supra,* the court quoted from the *Murphy* case, wherein it was said:

" 'We do not believe that in cases of this kind, that, to be guilty of willful and wanton negligence as defined in the law, one must necessarily be in the state of mind of a person who has a feeling of ill will against the injured party and who intends to commit the injury complained of. A conscious indifference to consequences which is shown by an intentional disregard of a known duty necessary to the safety of the person or property of another would come within the definition of willful and wanton negligence.' "

In the instant case, the evidence shows that the plaintiff and defendant were sleepy and tired. Defendant admits that to be true as does the plaintiff. The attendant at the gasoline station also testified that the two men appeared to be very tired and sleepy and he warned them to be careful. Defendant knew that he was sleepy and was apt to fall asleep while driving, yet he took control of the automobile and drove until he actually fell asleep which resulted in the accident whereby plaintiff was injured.

In *Barmann v. McConachie,* 289 Ill. App. 196, the court continuing in its opinion, at page 202, said:

"Defendant seriously contends that defendant's failure to judge correctly of his ability to resist sleep was an error of judgment and that it will not support a finding of willful and wanton negligence. Defendant's act did not arise from an error of judgment. It came about by reason of his failure to exercise judgment. He permitted himself to go to sleep while driving and an act of omission may be made the basis of willful and wanton negligence, the same as an act of commission.

"The finding of the jury that the defendant was guilty of wilful and wanton negligence is supported by the law and evidence."

Counsel for defendant further complains that the court erred in not permitting defendant an opportunity to present his case, because the court did not wait for certain witnesses for the defense. No showing is made by counsel as to why the witnesses were not present at the trial. There has been no showing of abuse of discretion resulting in injury to defendant. The cause was tried before a jury and it was the function of the jury to pass upon the facts and decide just what was the proximate cause of the accident. Even though the jury may, in the opinion of the trial judge or a reviewing court, have arrived at a different conclusion than would the court had it been the court's function to pass upon the evidence, yet the weighing of the evidence and the inferences to be drawn therefrom, as well as the proximate cause of the injury, were well within the province of the jury to decide.

No complaint is made as to the instructions given and they seem to properly point out the law applicable to the facts herein.

For the reasons herein given the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and BURKE, J., concur.