**David CARTER, DBA Carter Auto Sales, et al., Appellants,**

v.

**Joe Franklin DRIVER, Appellee.**

Court of Appeals of Kentucky.

Sept. 26, 1958.

Charles A. Williams, Williams, Rivers & Melton, Paducah, for appellants.

Richard R. Bryan, Charles W. Runyan, Paducah, for appellee.

CULLEN, Commissioner.

This action was instituted by the appellee, Joe Franklin Driver, against the appellants, David Carter, dba Carter Auto Sales, G. C. Pugh and Bobby Pugh, to recover damages in the total sum of $26,939.50 for pain and suffering, loss of wages, medical expenses and permanent injury. The alleged injuries were said to have resulted from an automobile collision which occurred, due to the appellants' negligence, near Dwight, Illinois, in September 1955. This appeal is from a judgment on a verdict of $14,486.50 in favor of the appellee.

The appellants contend that reversal should be granted because the appellee failed to prove (1) that he was not a guest within the meaning of the Illinois guest statute at the time of the collision, and (2) willful and wanton misconduct on their part in connection with the collision. It is contended also that the instructions were erroneous and that the proof of permanent injury was insufficient to support the jury's award of $10,000 for that item.

Driver, Carter and G. C. Pugh were operators of separate used car agencies in Paducah in 1955. All three agencies purchased cars in Illinois for resale in Kentucky. Several days before the accident which gave rise to this action, Luther Downey, Carter's employee, contacted Driver in regard to borrowing a towbar to be used in transporting autos to and from Illinois. Driver explained that he and Bobby Pugh, son of G. C. Pugh and engaged in business with him, were planning to go north to purchase cars and it was arranged for them to go with Downey. A fourth man, J. B. Williams, was sent along with Downey by their employer, Carter. Although Carter, Pugh and Driver were competitors, the evidence indicates that not infrequently trips to purchase cars were made as joint expeditions. It appears also that it was not uncommon for the parties to exchange opinions on the value of cars being purchased. Thus the instant trip, wherein Driver was going to purchase cars for himself and his partner, Koch, Bobby Pugh for himself and his father, and Downey and Williams for their employer, Carter, was in no sense unusual. However, Carter said he knew nothing of this expedition's arrangement.

The group left Paducah around midnight in a car driven by Downey and owned by Carter. Downey was towing another car which Carter had purchased previously and was returning. Later Driver purchased gas and drove for a while. After stopping for breakfast at Gibson City, Illinois, the journey was resumed with Bobby Pugh driving. The accident occurred a few miles out of Dwight, Illinois, and about an hour's drive from the breakfast stop, on a straight stretch of highway when the lead car struck a bridge abutment. The towed car ran into and over the top of the lead vehicle in which the group was riding.

None of the occupants of the wrecked car retained more than a hazy recollection of any events occurring after the breakfast stop. A witness who had been following the Carter vehicles at a speed of about 50 miles per hour said that the lead car suddenly veered to the right, striking the bridge. A truck driver who was approaching from the opposite direction said the lead car stopped suddenly and the towed car came up and over it. The lead car landed upside down on the bridge. The other car was thrown completely over the bridge. The latter witness had followed the Carter vehicles for several miles and had noticed nothing unusual about their operation prior to the sudden unexplained accident.

The controversy involves the so-called Illinois guest statute of 1955. It follows:

"No person riding in a motor vehicle as a guest, without payment for such ride, nor his personal representative in the event of the death of such guest, shall have a cause of action for damages against the driver or operator of such motor vehicle or its

owner or his employee or agent for injury, death or loss, in case of accident, unless such accident shall have been caused by the wilful and wanton misconduct of the driver or operator of such motor vehicle or its owner or his employee or agent and unless such wilful and wanton misconduct contributed to the injury, death or loss for which the action is brought. * * *" Illinois Revised Statutes 1955, Chapter 95½, Section 58a.

The appellants argue that Driver's presence in the car was in furtherance of his own interests and that he was not a passenger for hire or a business invitee. It is their theory that his status was that of a guest within the meaning of the Illinois statute, and he was required to show willful and wanton misconduct on their part before he could recover for his injuries. It is argued that submission of the case to the jury on a theory of res ipsa loquitur was thus erroneous.

The appellee argues that since he paid for gas and assisted in the driving and would have given his opinion on any cars which might have been purchased, his presence in the car was sufficiently conducive to the furtherance of business interests of Carter and Pugh to remove him from the status of guest. The appellee argues further that, even if he were considered a guest, the doctrine of res ipsa loquitur placed the burden upon the appellants to explain the accident or prove their lack of negligence.

■ We believe the appellee was a guest within the meaning of the Illinois statute. In construing that statute the Illinois Court said, in Miller v. Miller, 395 Ill. 273, 69 N.E.2d 878, 882:

"* * * the word 'guest' is employed to desigate one whom the owner or possessor of a motor car or other vehicle invites or permits to ride with him gratuitously, that is, without any financial return except such slight ben-

efits as it is customary to extend as part of the ordinary courtesies of the road. * * *

"* * * if the transportation confers only a benefit incident to hospitality, companionship or the like, the passenger is a guest. On the other hand, if the carriage tends to promote mutual interests of both the person carried and the driver, or if the carriage is primarily for the attainment of some objective or purpose of the operator, the passenger is not a guest."

In the instant case the appellee was permitted to ride gratuitously except for his voluntary assistance in driving and the purchase of gas once. These contributions were merely incidental. His transportation was not conditioned upon them and thus they were not "payments" so as to make the appellee a passenger for hire. See 5A Am.Jur., Automobiles and Highway Traffic, section 518. Furthermore, the carriage was not for the promotion of the mutual interests of both the appellee and the appellants. Nor was it primarily for the attainment of the appellants' objectives. Any opinions given by the appellee on cars which the appellants contemplated purchasing would have been given gratuitously, to say nothing of their being given to competitors. In our opinion the carriage was not given in return for views on car values, nor in expectation of any return, but was solely to accommodate the appellee. The mere fact that the appellee could be expected to accommodate the appellants in a similar manner in the future, or that he had accommodated them similarly in the past, is not sufficient to affect the appellee's status as a guest in the absence of any showing that the carriage was conditioned upon anticipatory returns or a payment for past services. As we have pointed out, customary courtesies are not payments. Our interpretation of the appellee's status under the guest law in Illinois is that the appellee was being transported as a guest at the time of the accident. So that question was not one for the jury.

■ We do not believe the evidence was sufficient to support a finding of gross and wanton negligence on the part of the appellants. In Streeter v. Humrichouse, 357 Ill. 234, 191 N.E. 684, 686, gross and wanton negligence which would permit recovery under the Illinois guest statute was described as follows:

"To constitute an act wanton, the party doing the act or failing to act must be conscious of his conduct, and, though having no intent to injure, must be conscious, from his knowledge of the surrounding circumstances and conditions, that his conduct will naturally and probably result in injury. An intentional disregard of a known duty necessary to the safety of the person or property of another, and an entire absence of care for the life, person, or property of others, such as exhibits a conscious indifference to consequences, makes a case of constructive or legal willfulness."

In the instant case there was no evidence of "a conscious indifference to consequences" or "an intentional disregard of a known duty." In fact, the accident remains unexplained, the victims being unable to recall the circumstances and the eyewitnesses having seen no cause. And while the facts and circumstances show that in the ordinary course of events such an accident would not occur, thus presenting in themselves reasonable evidence of negligence under the doctrine of res ipsa loquitur, that doctrine will not supply evidence of willful or wanton negligence. 38 Am.Jur., Negligence, section 308; 65 C.J.S. Negligence § 220(7).

The appellee argues that the driver of the vehicle must have gone to sleep and that falling asleep while driving constitutes such a reckless disregard of premonitory symptoms as to warrant a holding of gross or wanton negligence under the Illinois guest statute. See Barmann v. McConachie, 289 Ill.App. 196, 6 N.E.2d 918. In that case the driver, knowing himself to be tired, continued to drive a distance of some three miles at a speed of 40 miles per hour and then fell asleep. He was proved to be wantonly negligent.

■ The decision in the Barmann case was based upon the *proof*, not upon res ipsa loquitur. In the instant case there is no showing that the driver was sleepy or asleep at the time of the accident. That the driver fell asleep may be a logical presumption, but the accident could have been due to some completely illogical happenstance or a mechanical defect constituting, at the most, ordinary negligence. Under the circumstances, the jury was required to speculate concerning the specific act of negligence. So this question also should not have been submitted to the jury.

It follows that the trial court should have sustained the appellants' motion for a directed verdict. We do not reach the questions concerning erroneous instructions and excessive damages.

Although the appellants' motion for a directed verdict was timely made, their motion for a judgment notwithstanding the verdict was not. Therefore, the judgment is reversed with directions that if upon another trial the evidence is the same, a verdict shall be directed for the defendants.