Charles L. Gardner, Appellee, v. Ben Steele Weigher Manufacturing Company, Appellant.

Gen. No. 5,026.

1. VERDICTS—*what does not fail to show preponderance of evidence.* Where there are only two witnesses and they contradict each other directly as to vital facts, it does not necessarily follow that there is no preponderance of the evidence for the plaintiff.

2. INSTRUCTIONS—*how ambiguity may be cured.* An ambiguous instruction may be cured by another instruction which makes the ambiguous element clear.

3. INSTRUCTIONS—*when upon weighing of evidence properly refused.* *Held,* that the following instruction, upon the subject of the weighing of the evidence by the jury, was properly refused:

"The court instructs the jury that you are to look at the evidence in this case in a common sense light, and to judge it by that experience and observation of human affairs of which you are possessed as individual members of society, and will endeavor to arrive at the truth as the evidence shows it to be. If the claim made by either party is unusual, unreasonable and unnatural, out of the ordinary course of affairs, you are not required to take the

same for granted upon slight evidence; nor should you so find, except upon proof of a reasonable character and which satisfies the mind."

4. CONTRACTS—*effect of clause "the receipt whereof is hereby acknowledged," in sealed instrument.* The words, "the receipt whereof is hereby acknowledged," appearing in an instrument, though under seal and acknowledged, are, in effect, nothing more than a receipt and have no greater effect than a receipt not under seal.

Assumpsit.    Appeal from the Circuit Court of Peoria county; the Hon. NICHOLAS E. WORTHINGTON, Judge, presiding.    Heard in this court at the April term, 1908.    Affirmed.    Opinion filed August 10, 1908.

ROBERT N. McCORMICK, for appellant.

C. E. McNEMAR and A. JACOBSON, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

Early in February, 1906, appellee had perfected an improvement upon automatic grain weighing machines, and had taken some steps to obtain letters patent therefor, through Mr. La Porte, a patent solicitor of Peoria.    About February 20, 1906, one Ashworth, then secretary and manager for the Ben Steele Weigher Manufacturing Company, appellant, and appellee entered into a contract for the sale of the invention to appellant.    Later a misunderstanding arose relative to the amount of the consideration, and appellee brought this suit in assumpsit against appellant in the Circuit Court of Peoria county for what he claimed was due him under the contract.

The declaration contained the consolidated common counts and three special counts.    The first special count averred that on or about February 20, 1906, in consideration that appellee would transfer and assign to appellant all his right, title and interest in and to a certain new improvement in grain weighers which he had invented, and for which he was about to apply for letters patent, that appellant orally promised to pay

350    APPELLATE COURTS OF ILLINOIS.

Gardner v. Ben Steele Weigher Manufacturing Co., 142 App. 348.

appellee the sum of $1,000 in cash, and in further consideration for the transfer and assignment of said improvement, promised to manufacture or cause to be manufactured and sold, 500 of said grain weighers every year for the period of ten years, and to pay to appellee each year $2 for each grain weigher so manufactured and sold; and as a further consideration, appellant promised to transfer to appellee five shares of the capital stock of said appellant of the value of $500; and further averred that he did, on the same day, transfer and assign to appellant all his right, title and interest in and to said improvement, and that appellant disregarded its promises and undertakings in that behalf. The second·and third special counts were the same as the first, except that they omitted the averment relative to the shares of stock. Appellant filed a plea of the general issue.

That appellee invented the improvement to the grain weigher and sold it to appellant is admitted; but that he did not receive the contract price is contested.

Upon the trial, appellee, to support his contention, testified that in the early part of February, 1906, he had a conversation with one Ashworth, general manager for appellant, in which he asked Ashworth what he thought the invention ought to be worth; that Ashworth said, "$1,000," and offered him that amount for it, but that he said he would not take it at that time; that afterwards he had a second conversation with Ashworth while at work at the drop hammer in appellant's shop, at which a Mr. Lick was present; that later he had another conversation with Ashworth, who said that he would give $1,000 in cash, and have the machines built in Canada, with a royalty of $7 each, give him half the royalty, and bind appellant to make no less than 500 machines a year, and commence manufacturing the machine in 1907; that under such an agreement, he assigned all right and title to the invention over to the appellant; and that he and Ashworth went to La Porte's office, a patent attorney for appel-

lant, who had done some of the preliminary work in securing a patent for appellee's invention; and that La Porte said: "This is the formal assignment we usually make," and read it over to him and he signed and acknowledged it; that he had no other talk with Ashworth after that time with reference to the contract until about a year before the trial, when he was discharged from appellant's employ. At that time he told Ashworth he was ready to settle, and Ashworth said there was nothing to settle. Appellee further testified that he had never received one penny nor any other consideration for his invention. Lick testified that he heard in a conversation between appellee and Ashworth held at the drop hammer, that appellee was to receive $1,000.

Ashworth testified for appellant and denied that he had any conversation with appellee, in which he agreed to pay him $1,000 if he would assign the invention, and denied that he said that appellant would obtain a royalty of $7 a machine in Canada, and pay appellee half of it. (This proof varies from the declaration as to the amount of the royalty.) He also testified that he did not remember that Lick was at their place on the day he had the conversation with appellee. He said that appellee stated that La Porte was making up the papers for the patent, and if appellant would agree to pay the expense of obtaining the patent, and give him his position back, he would agree to make the assignment to them; that appellee asked him to increase his wages, which he told him he would not do, and that he paid appellee one silver dollar for the assignment of the patent. On behalf of appellant, La Porte testified that he prepared appellee's application for a patent, and made the assignment; that appellee said that he was unable to dispose of his invention to the Reeves people, and that he was going to re-enter the employ of the appellant, and in consideration of their giving him employment, and paying the expenses of obtaining a patent, he was going to assign it to them; that he

352    APPELLATE COURTS OF ILLINOIS.

Gardner v. Ben Steele Weigher Manufacturing Co., 142 App. 348.

made out and read over the assignment to appellee, and that appellant paid his expense in making application for the patent. On cross-examination, he said he had been acting as patent solicitor for appellant since they had been in business.

Appellant introduced in evidence an agreement dated February 20, 1906, under seal, signed and duly acknowledged by appellee, reciting that appellee sold and assigned to appellant the full and exclusive right to an invention described in a specification prepared and executed on February 20, 1906, preparatory to obtaining letters patent to the improvement in grain weighers, which authorized the commissioner of patents to issue said letters to appellant as the assignee of appellee's entire right, title and interest in and to the same; and that appellant covenanted therein to pay appellee the sum of one dollar and other valuable consideration, the receipt whereof was therein acknowledged.

In rebuttal, appellee denied that he was out of employment at the time and thought it the best thing to come back and assign the patent on condition of obtaining his position back, and that he asked to have his wages increased or that anything was said about wages at that time. He denied that he told Ashworth at that time that La Porte was making the papers for the patent, and that, if appellant would agree to pay the expenses of the patent and give him his position back, he would assign the patent to it. He also testified that La Porte asked him what he was going to get for the patent, and that he did not tell him; but that he asked La Porte if he thought that the company would do as they agreed in the verbal contract; and he said they were honest and would do what they agreed.

The jury returned a verdict for appellee of $1,000. A motion for a new trial was denied, judgment was entered on the verdict and this appeal was taken by the company.

There was no evidence supporting the averment that

Second District—August, 1908. 353

Gardner v. Ben Steele Weigher Manufacturing Co., 142 App. 348.

appellee was to receive five shares of the capital stock of appellant as a part of the consideration for the assignment. The court instructed the jury that there could be no recovery for royalties, because for that purpose the suit was prematurely brought. Therefore, the only question is, should the verdict stand for the alleged cash consideration of $1,000.

It will be observed that the evidence was sharply conflicting on this question, it resting on the testimony of appellee, corroborated in a measure by Lick on the one hand, and the testimony of Ashworth, corroborated in some particulars by La Porte, and the assignment, on the other. This conflict necessarily involved the credibility of the witnesses. In some material particulars the testimony of appellee was directly contradicted by Ashworth, and from this appellant argued that appellee did not prove his case by a preponderance of the evidence, and that there can be no recovery. We do not understand the law to be that where there are only two witnesses, and they contradict each other directly as to vital facts, it necessarily follows that there is not a preponderance of the evidence for the plaintiff. On the contrary, we understand the law to be that while the plaintiff must prove his case by a preponderance of the evidence, the preponderance is not necessarily determined by the number of witnesses testifying. The jury are the judges of the credibility of the witnesses who testified in their presence and hearing and of the probability or the reverse of their testimony, and obviously may credit the testimony of one, and discredit that of the other. Therefore, the credibility of the evidence of appellee and Ashworth, and of the other witnesses, was for the jury to determine. This they did in favor of appellee, and their province in that particular should not be usurped by this court, and their finding should not be disturbed, unless they were in some material particular misled by the rulings of the trial court.

But two objections were urged to the action of the trial court in the admission of evidence. The first related to appellee's knowledge of appellant's patents on grain weighers. The second, to appellee's idea of how many claims could be procured if a patent was granted. Neither of these questions was material to the issue, and there was no error in sustaining objections thereto.

For appellee, the court instructed the jury that they should find the issue for the plaintiff, if they believed from the greater weight of the evidence that defendant was indebted to the plaintiff as set out in the declaration, or some count thereof. This appellant urges as error because there was no evidence that appellee was to recover certain shares of the capital stock of appellant as a part consideration for the sale of the improvement; and that the suit was instituted before royalties had accrued. But at appellant's request the jury was instructed:

"That under the evidence in this case, even though you may believe therefrom that the defendant was to make five hundred machines a year, for which it was to pay the plaintiff three dollars and fifty cents a machine, the plaintiff cannot recover any part of that amount in this case for the reason that this suit was begun by the plaintiff before the time had expired at which it was to pay the yearly amount due on the basis above stated, and that at the time this suit was brought there was nothing due from the defendant to the plaintiff on such account, if you believe the defendant was to pay such amount, and upon that question you should find for the defendant."

Appellant urges that appellee's instruction was ambiguous. If so, we are of the opinion that appellant's instruction cured the ambiguity. It has been held in substance that an ambiguous instruction may be cured by another instruction which makes the ambiguous element clear. McCommon v. McCommon, 151 Ill. 428; City of Lanark v. Dougherty, 153 *id.* 163; Day v. Por-

ter, 161 *id.* 235; Latham v. Roach, 72 *id.* 179; Village of Mansfield v. Moore, 124 *id.* 133; Hanrahan v. People, 91 *id.* 142.

In Chicago City Railway Co. v. Mead, 206 Ill. 174, the court held that instructions to the jury should be regarded as a connected series constituting a single charge, and that when so considered it must be clear that the jury have been misled or have drawn an improper inference from a single instruction, before the judgment will be reversed. How these instructions read together could have misled the jury or caused them to draw an improper inference from the evidence is not apparent.

Appellant's argument directed toward appellee's other instruction is substantially to the same effect and without merit.

Appellant urgently insisted that the court erred in refusing its offered instructions 1, 2, 3 and 4. The first instruction which sought to direct a verdict for appellant was properly refused for the reason that there was evidence in the record which, with all proper inferences to be drawn therefrom, fairly and reasonably tended to support the cause of action alleged in the declaration. Libby, McNeill & Libby v. Cook, 222 Ill. 206, and cases there cited; I. C. R. R. Co. v. Bailey, 222 Ill. 480.

The third read as follows:

"The court instructs the jury that you are to look at the evidence in this case in a common sense light, and to judge it by that experience and observation of human affairs of which you are possessed as individual members of society, and will endeavor to arrive at the truth as the evidence shows it to be. If the claim made by either party is unusual, unreasonable, and unnatural, out of the ordinary course of affairs, you are not required to take the same for granted upon slight evidence; nor should you so find, except upon proof of a reasonable character and which satisfies the mind."

Appellant relies on People v. Geddis, 42 Ia. 264, to support this instruction. It was not for the jury to say whether appellee's claim was an unusual one; or whether or not it was an unreasonable or unnatural claim; or whether or not it was out of the ordinary course of affairs. Contracts are not construed by such tests.. Courts of law do not make contracts for parties or decide whether or not a contract sued on is unusual or unnatural. In the absence of fraud, courts of law enforce contracts as made. The sole question for the jury to decide was whether the amount to be paid for the grain weighers was the amount claimed by the appellant. Moreover, to warrant a recovery in a suit of this character, the evidence need not satisfy the mind of the jury. It is sufficient if the evidence preponderates, although but slightly, in favor of the verdict. The Iowa case relied on was a suit to recover on a penal bond for a breach of its condition, the issue being that one of the obligors was *non compos mentis* at the time of the execution of the bond, and the question being whether or not certain acts of the defendant were unreasonable, unusual, or out of the ordinary, when tested by the light of the experience of other men under similar circumstances. In the case at bar the sanity of the parties was not in issue, and for that reason, if for no other, the principle announced in the Iowa case had no application to the facts in this case, and the instruction was properly refused.

We will not extend this opinion to consider in detail appellant's second and fourth instructions, except to say that they were not applicable to the facts appearing in the record, and were argumentative and subject in some measure to the criticism that we made to instruction. three, refused.

No objection was made that extrinsic evidence was admitted to contradict, explain or vary the terms of the assignment relative to the consideration mentioned therein.

If the words, ''the receipt whereof is hereby ac-

knowledged," appearing in the assignment, though under seal and acknowledged, be treated as a receipt, they have no greater effect than a receipt not under seal. As said in Elder v. Hood, 38 Ill. 533: "The rule is well recognized both by the courts of Great Britain and in this country, such an acknowledgment, in a deed of conveyance, is but a receipt for money, and, like any other receipt, is subject to be contradicted, explained, or varied in its terms by extrinsic evidence. Whilst the deed must speak for itself in all other respects, the acknowledgment of the payment of the money is only treated as a receipt, and is governed by the rules of evidence applicable to such instructions." The question how much weight should be attached to the receipt should be left entirely with the jury. Herkimer v. Nigh, 10 Ill. App. 375. This principle was conceded by both parties and the jury were accurately instructed as to the effect of a receipt.

Finding no reversible error in the record, the judgment of the lower court is affirmed.

*Affirmed.*