Frank Bobalek, Minor, by Stephen Bobalek, His Next Friend, and Stephen Bobalek, Appellees, v. Ralph L. Atlass, Appellant.

Gen. No. 40,968.

Heard in the third division of this court for the first district at the October term, 1939. Opinion filed June 24, 1942. Rehearing denied September 18, 1942.

HINSHAW & CULBERTSON, of Chicago, for appellant; OSWELL G. TREADWAY, of Chicago, of counsel.

LEE D. MATHIAS and JOSEPH STELLER, both of Chicago, for appellees; CLYDE L. TODD, of Chicago, of counsel.

MR. JUSTICE HEBEL delivered the opinion of the court.

This appeal involves two actions, one, brought by Frank Bobalek, a minor, by Stephen Bobalek, his next friend, against Ralph L. Atlass, defendant, to recover damages for personal injuries alleged to have been sustained while riding in an automobile belonging to Stephen Bobalek, the other plaintiff, and driven by Stephen Bobalek, Jr., when the said automobile in which he was riding turned over at the intersection of Foster

avenue and Leavitt street, public highways in the City of Chicago, Illinois; and the other, brought by Stephen Bobalek to recover for damages to his automobile and for moneys expended for hospital and medical expenses on behalf of the other plaintiff, Frank Bobalek, who is his son.

The complaint consisted of six counts, numbers I, III and V, purporting to state a cause of action against, for, and on behalf of the plaintiff, Frank Bobalek, a minor, and numbers II, IV and VI, purporting to state a cause of action for and on behalf of the plaintiff, Stephen Bobalek. Counts I, II, III, and IV charge that the defendant was guilty of negligence which caused the injuries and damages alleged to have been sustained, and Counts V and VI charge that the defendant was guilty of wilful and wanton misconduct. The case was tried before a jury, which returned two verdicts, one finding the defendant guilty as to the plaintiff, Frank Bobalek, and assessing his damages at $7,500, and the other finding the defendant guilty as to the plaintiff, Stephen Bobalek, and assessing his damages at the sum of $713.

The trial court submitted to the jury the following interrogatory: ''Was the defendant guilty of wilful and wanton misconduct which proximately contributed to the injury of Frank Bobalek, a minor, as alleged in the complaint?''; which question was answered in the negative. Defendant filed his motion for new trial, which was overruled. Plaintiff, Stephen Bobalek, filed a remittitur of $13 and judgments were entered in the sum $7,500 on the verdict in favor of Frank Bobalek, a minor, and $700 on the verdict in favor of Stephen Bobalek. As before indicated, it is from these judgments that defendant appeals.

The plaintiffs suggest that defendant's statement of the case is only partially correct, and state further that Frank Bobalek, by Stephen Bobalek, his next friend, and Stephen Bobalek, sue the defendant on separate claims, for injuries to Frank Bobalek, and damages to

Stephen Bobalek growing out of an automobile accident involving plaintiff's and defendant's automobiles. Defendant was driving his automobile in a westerly direction along Foster avenue followed by the automobile of Stephen Bobalek, driven by Stephen Bobalek, Jr., near Leavitt street, Chicago; that a short distance west of Leavitt street the defendant after turning into the outer lane of traffic on Foster avenue suddenly turned his car to reverse his direction, without warning or signal to the driver of the Bobalek car in which Frank Bobalek was a passenger, into the path of the latter car then traveling in the inner lane of traffic; and that the Bobalek car to avoid striking defendant's car swerved to the west of Leavitt street on Foster avenue, resulting in injuries to and the amputation of part of Frank Bobalek's right hand, and damages to Stephen Bobalek for doctor's bills, hospital bills, and medical care, and repairs to the Bobalek car.

The occurrence complained of took place at about 8:00 or 8:30 a.m. on the morning of July 16, 1935, at the intersection of Foster Avenue and Leavitt street. Both streets are paved; Foster avenue runs east and west, is 40 feet wide between curbs, and accommodates four lines of traffic; and Leavitt street runs north and south and is 28 feet wide between curbs. On the morning in question, at about 5:30 a.m. the plaintiff Stephen Bobalek, his son, Stephen Bobalek, Jr., Frank Bobalek, and Vincent Nemcek, a cousin of the boys, left the Bobalek home at 4045 N. St. Louis avenue, in the Buick automobile of Stephen Bobalek, and drove to 5200 Kenmore avenue, which was the place of the plaintiff, Stephen Bobalek's work. The boys assisted the father with the work until about 8:00 a.m. when they started home in the automobile, Stephen Bobalek, Jr., doing the driving. They proceeded west on Foster avenue.

The defendant, Ralph Atlass, driving a Packard automobile, was also traveling west on Foster avenue. Apparently the Atlass car had been some distance ahead

of the Bobalek car as the boys in the Bobalek car did not notice it until they approached Damen avenue, two blocks east of Leavitt street. As the two cars approached Leavitt street the Atlass car was still some distance ahead of the Bobalek car and both cars were traveling in the inner traffic lane on the north side of Foster avenue. As the Atlass car approached Leavitt street it slowed down. Although the Bobalek car was gaining on it, the driver of the Bobalek car gave no warning signal of his approach.

The evidence with respect to how the accident happened is in conflict. The defendant, who was alone in his car at the time, testified that he observed the approach of the Bobalek car in his mirror when it was about a block behind him; that it was traveling at a high rate of speed; that he intended to turn left on Leavitt street and that he slowed his car down to stop with the front of the car at the center of the intersection, intending to allow the Bobalek car to pass before making his turn; that the next he saw of the Bobalek car it was sliding past him on its right side; that it came to a rest at the southwest corner of the intersection with the top to the south and the radiator facing east; that there was no contact between the cars; that there were stop lights on the rear of his (Atlass') car; that they operate by a foot brake, and that as he slowed down and stopped he had his foot on the brake. The speed of the Bobalek car as it approached Leavitt street was estimated by Stephen Bobalek, Jr., the driver of the car, at 25 to 28 miles per hour. Vincent Nemcek who was riding in the car estimated the speed at 25 to 35 miles per hour. Frank Bobalek stated that they were traveling on Foster avenue about 45 miles an hour behind Mr. Atlass' car "and we were about 75 feet behind him and we came to Leavitt and he slowed down and so did we." He further testified that "Then he (defendant) went across Leavitt and pulled to the north curb and we kept going. We stepped on the gas a little more after slow-

ing down, to go faster, and as we passed Leavitt and we were about ten yards behind this car that pulled over, he suddenly swerved without giving any warning towards the middle of the street." Hulda Johnson, a witness for plaintiff, testified concerning the Bobalek car that "it was going fast." The defendant testified that when he observed the Bobalek car in his mirror, at which time it was about a block to the rear of his car, it was going well over 50 miles an hour.

As to what happened at the intersection, the defendant testified that as he approached Leavitt street, he was driving in the inner lane, that he slowed down, and that he brought his car to a stop with the front end at about the center of the intersection. Stephen Bobalek, Jr., testified that the Atlass car slowed down and pulled into the outer lane, crossed Leavitt street, and as he started to pick up his original speed, it turned into the inner traffic lane, that he swerved to avoid hitting it, applied his brakes and the car turned over. Vincent Nemcek gave substantially the same testimony as did also Frank Bobalek. These three witnesses placed the point at which the Bobalek car turned over to the west of Leavitt street.

As to the position of the cars after the accident, the defendant testified that after the accident he pulled his car over to the southwest corner of the intersection where the other car had stopped—that his car was still on Leavitt street. Stephen Bobalek, Jr., testified that Frank and his cousin got in Mr. Atlass' car when it was standing at the southwest corner of the intersecting streets, about one half in Leavitt and one half in Foster, to which place he had driven the car after Stephen Bobalek, Jr. got out of theirs.

The defendant contends that the verdicts of the jury are against the manifest weight of the evidence, and suggests that while the evidence is in hopeless conflict in many respects, there is by far more conflict in the facts testified to by the witnesses for the plaintiffs than

between the testimony of these witnesses and the witnesses for the defendant. Defendant then goes on to point out the testimony of defendant's witnesses. Plaintiffs' answer to this contention of defendant is that the respective verdicts are clearly supported by the greater weight of the evidence. Plaintiffs then point out the evidence in the record tending to support their claim. From an examination of the suggestions offered as to what evidence is in the record, it would appear that there is a conflict in the evidence such as to make it a question for the jury to pass upon, under the rules applicable as to who has the greater burden of proof. Plaintiffs admit that there is a conflict in the testimony of the respective witnesses as to the facts relating to the operation of the two automobiles immediately before and at the time of the injury to the plaintiff. Four witnesses for plaintiffs saw the operation of the two cars from different positions, under different conditions, at diverse distances, and it is suggested that it would be remarkable to say the least if they agreed as to all the details of the occurrence. A fifth disinterested witness for plaintiffs corroborated the other four witnesses that the accident happened west of Leavitt street. Four of them testified that the defendant's car suddenly turned from the north curb of Foster avenue toward the south curb of Foster avenue, into the path of the plaintiff's west bound car, and that plaintiffs' car swerved toward the south curb to get out of its way. It appears that there was no traffic moving east or west on Foster avenue, or north or south on Leavitt, nor were there any cars parked in the immediate vicinity at the curbs; that the weather conditions and conditions of the streets were most favorable.

When we come to pass upon the question involved, it was peculiarly for the jury to pass upon, the jury having the opportunity to observe the witnesses' manner of testifying, and their opportunity to know the

facts about which they testified. It was for the jury to determine where the truth lay as to how the accident in question happened. The verdicts indicate that the jury did not believe the testimony of defendant, but did believe the testimony of plaintiff's witnesses. From the facts and evidence called to our attention, we are inclined to agree with plaintiffs' suggestion that the evidence justifies the jury's verdict in favor of the respective plaintiffs. Plaintiffs go on to point out in detail the evidence which they believe sustains their theory and contend that the verdicts returned are sustained by the manifest weight of the evidence, that the manner of operation of the two automobiles immediately prior to and at the time of the accident was a question of fact and properly submitted to the jury, and that the court was justified in entering judgment on the verdicts.

Defendant urges that there was no evidence of contact between the two cars, but plaintiffs point out that the witness Vincent Nemcek testified that he observed a jerk of the plaintiffs' car he was riding in at the time of the accident; that Hulda Johnson testified that she heard a noise as though the two cars clashed together; and Stephen Bobalek, Jr. testified, ''I saw Atlass' car at the hospital. I examined the car and the front left fender and the wheel were grazed.'' Otto G. Hildebrand testified, ''I examined the Packard twice. I should say the car was damaged on the front left side on the fender and the rim.'' He examined the Atlass car at the hospital and saw damage to the left front fender. It is urged, too, that the turning over of the Buick car in turning to get out of the way of the Packard is further evidence of the contact of the two cars; that it is a well-known fact that a heavy machine when moving, or object when turning, as does an automobile under such circumstances may be upset, or turned over, by the very slightest contact or force, and the grazing of the left front fender of the Packard by the Buick as

it was turning around is good physical evidence that the Packard did contact the Buick as it was making the turn.

Defendant next contends that the court erred in permitting Dr. Schroeder to testify that the function of the plaintiff, Frank Bobalek's hand is about 10 per cent. In response to a direct question put to Dr. Schroeder, a witness for the plaintiffs, the doctor was permitted to testify that he was of the opinion that the function of plaintiff's hand was about 10 per cent of that of a normal hand. Defendant moved to strike the answer but the court permitted it to stand. It is suggested that the law is well settled that it is error to permit a physician to testify to the percentage of loss of use, since that is a question which must be determined by the jury; and that the testimony of Dr. Schroeder in this regard was particularly damaging to the defendant in that it tended to minimize greatly the plaintiff's use of his hand, whereas, the testimony of plaintiff himself indicated that he had quite considerable use of the hand and far in excess of 10 per cent. In support of defendant's position, the case of *International Coal & Mining Co. v. Industrial Commission*, 293 Ill. 524, is cited. There the court said: ". . . The determination of the percent of loss of use of the right eye and of the arms of applicant was an issue of the ultimate facts before the arbitrator and the Commission. (*Peabody Coal Co. v. Industrial Comm.* 289 Ill. 449.) It is competent to prove conditions, such as the comparative ability of the applicant to do certain things in the use of the injured member before and after the accident, as well as any other fact which would enable the Commission to draw an inference as to the ultimate fact to be determined, but under the rule in this State neither an expert witness nor a lay witness may take the place of the Commission and declare his belief as to the ultimate fact. . . ." The rule upon this question has always been that it was not for the expert witness' testimony to take the place of

the jury, and especially as to his belief as to ultimate facts. However, when we consider the question from plaintiffs' standpoint, it is urged that this witness properly testified that in his opinion plaintiff's hand had a function of about 10 per cent. Plaintiff cited *Seiffe v. Seiffe*, 267 Ill. App. 23, where this court in speaking of a doctor testifying to the 50 per cent loss of the use of vision of the plaintiff's left eye, held it to be proper, and that the trial court did not err in overruling objections thereto. There is in this record the testimony of Frank Bobalek that he had little or no movement in his right hand except in the thumb or first finger, and the jury had seen his hand when he testified, before Dr. Schroeder testified. And it is urged that it is doubtful if the jury's mind was even affected by the doctor's opinion because the jury only had to look at the hand to see that there was little use thereof. It appears from the evidence before the jury that they saw the second and third fingers fixed at a 50 per cent flection angle movable only sufficient to produce apposition to the thumb. The fourth and fifth fingers were missing above the metacarpal phalangeal joint, being the knuckle joint, the hand badly scarred on the back and front. The bones of the hand were badly broken and there were numerous fractures of the second, third, fourth and fifth fingers. It took the hand about 2½ years to heal to its state at the time of the trial. Frank Bobalek testified that there is no movement in the joints of the second and third fingers. Dr. Schroeder testified that in his opinion the condition was permanent, and in his opinion there was about 10 per cent normal function of the hand. There was evidence of the condition of the hand before and after the injury. The hand still pains the boy, and his right arm is not developed as the left but is a little shorter. The testimony of Frank Bobalek that his right arm was a little shorter is likewise complained of by defendant. However, after careful consideration of the suggestions offered, the facts and authorities submitted,

we are of the opinion that the court was not in error in ruling as it did upon the question involved. It was for the jury to pass upon the condition of the hand, and the evidence admitted does not seem to be such as for this court to conclude that there was error in the rulings of the court upon the admission of evidence. As to the defendant's complaint regarding the testimony of Frank Bobalek that "He turned so quick to avoid hitting him we had to turn, swerve, from hitting him," it is, of course, true that it is not proper for a witness to testify to conclusions generally, but—as urged by plaintiffs— a witness may testify properly in the nature of a conclusion where it is difficult to explain the subject, and particularly is this true of movements of an object. (*Casey v. Kelly-Atkinson Const. Co.*, 240 Ill. 416.) In *Knight v. Knight*, 178 Ill. 553, the court refers to such testimony as a short cut to express what actually took place. In the *Casey* case it was held that witness properly could testify, "There was plenty of time to do a thing."

Defendant also contends that it was error to permit Emily Bobalek to testify that the plaintiff was unable to help around the house as he did before he was hurt. In the case of *International Coal & Mining Co. v. Industrial Commission*, 293 Ill. 524, the court said:

"... It is competent to prove conditions, such as the comparative ability of the applicant to do certain things in the use of the injured member before and after the accident as well as any other fact which would enable the Commission to draw an inference as to the ultimate fact to be determined...."

Complaint is also made of the court's refusal to strike the testimony of Dr. Wajay that, "In my opinion he can not use that hand much." The reply made by plaintiffs is that the jury had at that time seen plaintiff's hand, and had been told of the limited use and movements of the remaining part of the hand, and that the jury was then as competent to pass on the use of the hand as the doctor, but that the doctor's opinion based

on her experience was proper. Upon this question, authorities are cited to justify the court's ruling.

It is the contention of defendant that the trial court erred in the giving to the jury of plaintiffs' 10 given instructions. Plaintiffs call attention to the law applicable to given instructions at the request of both plaintiffs and defendant, namely, that they are to be considered as a single series. In *Central Ry. Co. v. Bannister,* 195 Ill. 48, the court said:

"Instructions are to be considered as a single series and when so considered, if as a whole they state the law correctly, that is sufficient, even though one or more of them, standing alone, might be erroneous. (*Lourance v. Goodwin,* 170 Ill. 390). 'The instructions constitute one charge, and they are not the instructions of either party but of the court. . . .' (*Crowell v. People,* 190 Ill. 508.) In the case at bar, counsel for appellant, in their discussion of the instructions given on behalf of the plaintiff, ignore entirely those which they requested the court to give and which were given, . . ."

And in a further citation, *Reivitz v. Chicago Rapid Transit Co.,* 327 Ill. 207, the court said:

"The office of instructions is to give information to the jury concerning the law of the case for immediate application to the subject matter before them. The test, then, is not what meaning the ingenuity of counsel can at leisure attribute to the instructions, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions." Inaccuracy in an instruction is not grounds for reversal of a judgment, if from the instructions when regarded as a connected series, it is not clear that the jury were misled or had drawn improper inferences. (*Gardner v. Ben Steele Weigher Mfg. Co.,* 142 Ill. App. 348.) In the *Gardner* case, it was said by the court:

"In *Chicago City Railway Co. v. Mead,* 206 Ill. 174, the Court held that instructions to the jury should be regarded as a connected series constituting a single

charge, and that when so considered it must be clear that the jury have been misled or have drawn an improper inference from a single instruction, before the judgment will be reversed.'' In considering the instructions herein complained of, the court must therefore, consider them in the light of these authorities—as a single series. If from the entire instructions given at the request of plaintiffs and defendant, as applied to the evidence introduced and the circumstances of the trial, it appears that the jurors well understood the instructions as given, we must consider that they were clearly instructed upon the questions involved.

The defendant complains, first, of plaintiffs' given instruction No. 1, as an instruction which sets forth the facts as alleged in the counts of the complaint. This instruction is as follows:

''There are six counts of the Complaint herein.

''In Count I it is charged that the defendant on July 16, 1935, about 8:30 A. M. drove his automobile West on Foster Avenue, near Leavitt Street in the City of Chicago; that Stephen L. Bobalek, Jr. was then and there driving the automobile of Stephen Bobalek, his father, behind defendant's automobile West on Foster Avenue, and Frank Bobalek, a minor, one of the plaintiffs, was riding therein as a passenger;

''That as defendant's automobile passed said Leavitt Street, he steered it to the right towards the North curb of Foster Avenue, a short distance west of Leavitt Street, thereby misleading said Stephen L. Bobalek, Jr. into believing that the defendant intended to stop at the North curb of Foster Avenue, and when the automobile driven by Stephen L. Bobalek, Jr. was within, to-wit twenty-five feet of the defendant's automobile, the defendant carelessly and negligently abruptly turned his said automobile to the left, making a turn in said street, without extending his arm and hand horizontally as required by the Statute of Illinois, of his intention to turn left, at which time Stephen L. Bobalek, Jr. applied the

brakes and turned the Bobalek automobile sharply to the left to avoid forcibly striking the defendant's automobile, and by reason thereof plaintiff Bobalek's automobile unavoidably turned over, and Frank Bobalek, a minor, riding therein as a passenger sustained severe permanent injuries to his right hand making necessary the amputation of two fingers and part of said hand, thereby permanently crippling the said Frank Bobalek, and impairing and diminishing his future earning power.

"In Count II it is charged that defendant's then operation of his automobile as alleged in Count I aforesaid resulted in material damages to plaintiff Stephen Bobalek in the necessary expense of having said automobile repaired, and the furnishing of hospital, medical and surgical services to his minor son, Frank Bobalek, for said injuries by him sustained.

"In Count III it is charged that the defendant then and there steered and turned his automobile to the left in said street to make a U turn, directly in the path of the automobile driven by Stephen L. Bobalek, Jr., without giving any signal or warning to said Stephen L. Bobalek, Jr. of the defendant's intention, causing the two said automobiles to collide, and the Bobalek automobile to unavoidably turn over, and thereby to injure Frank Bobalek, a minor.

"In Count IV it is charged that plaintiff Stephen Bobalek sustained reasonable damages, the expense of having said automobile repaired, the reasonable expense for hospital services, physician's and surgeon's services furnished to his minor son, Frank Bobalek, for the injuries by him so sustained as a result of defendant's acts as alleged in Count III.

"In Count V it is charged the defendant wilfully and wantonly, in disregard for the safety of others, and without warning or signal by extending his arm and hand horizontally, of his intention to then and there make a left turn with said automobile as Stephen L.

Bobalek, Jr. was driving some twenty-five feet behind the defendant's automobile, drove into the path of the plaintiff Bobalek's automobile, causing the two automobiles to collide, and the Bobalek automobile to turn over, resulting in injuries to Frank Bobalek, a minor; that at and before the time in question Stephen L. Bobalek, Jr., and Frank Bobalek, a minor, plaintiff herein, were in the exercise of due care for their safety.

"And if you believe from the greater weight of the evidence that the defendant then and there drove and operated the said automobile in the manner and form as charged, and Frank Bobalek was then in the exercise of due care for his safety, you may find for plaintiff, Frank Bobalek. But if you believe from the greater weight of the evidence that the defendant then and there wilfully and wantonly operated and managed said automobile in the manner and form as charged, then contributory negligence of Frank Bobalek, if you believe that was such contributory negligence, at and immediately before the time and place in question would not bar his right to recover herein." So that the instruction as given sets forth the facts as alleged in each count of the complaint for the purpose of informing the jury as to the charges and allegations made. Defendant calls attention that the instruction tells the jury that in Count I of the complaint the defendant did certain acts and the plaintiff's driver, Stephen Bobalek, Jr. did certain other acts and that "by reason thereof plaintiff Bobalek's automobile unavoidably turned over." Further, that the instruction tells the jury that in Count II it is alleged that the defendant did certain acts "causing the two said automobiles to collide"; that the jury are also told by this instruction that the charges made in Counts II and IV are the same as those made in Counts I and III respectively; that the jury are not told by this instruction that it is charged in the complaint or any of the counts that the defendant was negligent; and

that the instruction does not leave the question of whether or not the defendant was negligent to the jury but on the contrary assumes that the particular acts alleged were negligence on his part. It is further urged that the instruction failed to advise the jury of the charge of proximate cause and to leave to the jury that question.

Plaintiffs' answer to defendant's contention is that an instruction informed the jury of the material allegations charged in the complaint, particularly in the words of the complaint, is not only considered unobjectionable but to be proper, citing *West Chicago St. Rys. Co. v. Lieserowitz,* 197 Ill. 607; *Central Ry. Co. v. Bannister,* 195 Ill. 48; and *Murphy v. King,* 284 Ill. App. 74. This instruction, it appears summarized for the jury the material allegations alleged in the complaint, in terms of the complaint without repeating the allegations in the respective counts except by reference. Then, plaintiffs call our attention to the facts that Counts I, III and IV state a cause of action for plaintiff Frank Bobalek, a minor. Counts II, IV and VI state a cause of action for Stephen Bobalek, the father. This instruction told the jury the charges to be found in the complaint of the negligent operation of defendant's automobile at the time and place in question, the manner of operation of the plaintiffs' automobile with due care, and by reason of negligent operation of defendant's automobile in the manner and form as charged in the complaint the plaintiff Frank Bobalek sustained severe permanent injuries to his right hand. It left to the jury to determine from the greater weight of the evidence whether the charges were proven against the defendant as to the claim of Frank Bobalek only. Nothing appears in the record suggesting that the jury did or might have speculated regarding the complaint. They showed by answering the special interrogatories as to the malice counts in the negative that they clearly understood the instruc-

tions. Their answer thereto in favor of the defendant eliminates further consideration of Counts V and VI of the complaint.

Counts I and III of the complaint state the necessary elements of a cause of action for Frank Bobalek, a minor, against defendant, and this court will assume that the jury based its verdict in favor of Frank Bobalek on either or both of said counts. The instruction does not omit the principle of contributory negligence of Stephen Bobalek and Stephen Bobalek, Jr. The jury were thereby told it was charged in the complaint that Stephen L. Bobalek, Jr. and Frank Bobalek, a minor, were then in the exercise of due care. The jury were further instructed with reference to contributory negligence by plaintiffs' instruction No. 8, and further by defendant's instructions 9 and 10. The jury were further told that it was charged in the complaint that by reason of the negligent operation of the defendant's automobile in the manner and form as charged while Frank and Stephen Bobalek, Jr. were in the exercise of due care, Frank Bobalek was injured. Thus, it is urged the instruction does not ignore the principle of proximate cause; and that this was equivalent to saying that the negligent operation of defendant's automobile was the proximate cause of the injury. The jury were further instructed as to proximate cause by plaintiffs' instruction No. 8, and defendant's instruction No. 12. Upon consideration of this instruction, it is always proper to advise the jury of the charges alleged and made so that they may properly consider the questions and pass upon them as to whether they are sustained by the evidence offered.

The defendant then goes on to complain of plaintiffs' given instruction No. 2, which is as follows:

"If from the evidence and instructions of the Court the jury find the defendant guilty, and that Frank Bobalek, a minor, one of the plaintiffs, sustained bodily injuries and damages in the manner and form as

charged, then in estimating such damages, if any, it will be proper for the jury to consider Frank's physical condition before said injuries, the nature, extent and duration or permanency of such bodily injuries, if any, and any disfigurement of a member of his body, and the extent thereof, in so far as is shown by the evidence, if any, and the bodily pain and suffering, if any, he sustained or will sustain as a proximate result, and in consequence of such injuries, and the effect such injuries may have on his power and ability to labor, earn money and a livelihood after he reaches twenty-one years, if any, in so far as may be shown by the evidence; and any damages in so far as they are alleged in the Complaint and shown by the evidence to be the necessary and direct result of the injuries complained of. From a consideration of the facts and circumstances in evidence allow the plaintiff Frank Bobalek such sum as you believe from the evidence will be fair and just compensation to him for the injuries sustained, if any." Defendant suggests that this instruction, as in the previous instruction, ignores the fact that there were two plaintiffs and two separate and distinct actions joined. Counts I, III and V of the complaint purport to state a cause of action for the plaintiff, Frank Bobalek, alone. Counts II, IV and VI purport to state a cause of action for the plaintiff, Stephen Bobalek, alone. The issues in the two cases are separate and distinct. The instruction in question was applicable only—urges the defendant—if the defendant was found guilty as to Counts I, III and V of the complaint. That a finding of guilty as to Counts II, IV or VI would not justify an assessment of damages for the plaintiff, Frank Bobalek; but that the instruction directs such assessment. The defendant contends that the instruction permits the jury to speculate on the effect the injuries sustained "may" have on his earning power in the future; that it does not require the bodily pain and suffering nor these losses from earning power

to be proven with a reasonable degree of certainty; and cites in support of his position the case of *Stevens v. Illinois Cent. R. Co.*, 306 Ill. 370. Plaintiffs answer defendant's criticism of this instruction by saying that defendant's instructions 7 and 12 each ignore the fact that there were two plaintiffs in the case, and, therefore, counsel should not complain of plaintiffs' instruction when defendant's instructions may be criticized for the same reason, which, of course, is the rule. (*Carlin v. Michigan Cent. R. Co.*, 189 Ill. App. 23.) As to defendant's argument that this instruction is mandatory and directory, the plaintiffs suggest that the instruction does not purport to inform the jury as to the liability feature, but only to tell them what elements of damage if shown by the evidence they may consider if, from the evidence and instructions, they believe the defendant guilty. Upon consideration of a similar instruction, in *Bernier v. Illinois Cent. R. Co.*, 296 Ill. 464, the court said:

". . . The instruction does not direct a verdict for the plaintiff, but says simply that if the jury find the defendant guilty, then they shall award to the plaintiff certain damages. The instruction does not purport to lay down any rule regarding the liability of the plaintiff in error, but lays down a rule for the measure of damages in case plaintiff in error is found liable for the death." Plaintiffs further suggest that the jury were not required to speculate on the effect of Frank's injuries and the effect which the same would have on his ability to labor, nor whether said injuries were proven by a reasonable degree of certainty. The jury saw Frank's hand, appearing as described by Dr. Schroeder at the time of trial. By the instruction the jury were told to consider only the elements enumerated in the instruction if such were alleged in the complaint and shown by the evidence. There are other points made by defendant in criticism of the instruction, but we believe we have mentioned the vital contentions, and are

inclined to agree with plaintiffs suggestions. Under the circumstances, we are of the opinion that there was no reversible error in the giving of this instruction.

Then again, defendant complains of plaintiffs' given instruction No. 3, which is as follows:

"If you find the defendant guilty as charged in the Complaint or some Count thereof, it will become your duty to determine from the evidence the damages, if any, Stephen Bobalek, one of the plaintiffs, sustained by reason of the negligence of the defendant as charged in the Complaint or some Count thereof, and in this connection, you may consider, if shown by the evidence, the following:

"1. The condition or state of repair of said automobile immediately before and immediately after the time in question; if said automobile was repaired, the fair and reasonable cost of the repairs, made necessary by the acts of the defendant, to restore said automobile to the same condition as it was just prior to the time in question,

"2. Any and all moneys expended by Stephen Bobalek, or for which he became liable, for reasonable charges for hospital service, medical supplies, doctor bills for services furnished to Frank Bobalek, a minor, that were made necessary to cure said Frank Bobalek of his bodily injuries so sustained by reason of the negligence of the defendant, if any, as charged in the Complaint, and assess such damages, if any, in favor of Stephen Bobalek, one of the plaintiffs, and against the defendant as in your judgment will fairly compensate the plaintiff, Stephen Bobalek, for any damages so sustained by him as shown by the evidence, if any." A number of objections are urged to the giving of this instruction and the fact pointed out that there are two plaintiffs in the case and two causes of action; that there are six counts in the complaint; that Counts I, III and IV purport to state a cause of action for Frank Bobalek alone, while Counts II, IV and VI purport to state a

cause of action for the plaintiff, Stephen Bobalek alone. It is objected that the instruction directs the jury to assess damages for the plaintiff, Stephen Bobalek, if the jury find the defendant guilty as charged in the complaint "or some Count thereof"; that under this instruction the jury are told to assess damages for plaintiff, Stephen Bobalek, if they find the defendant guilty as charged in Counts I, III or V thereof, which purport to state a cause of action only for the plaintiff, Frank Bobalek; that under the allegations of the complaint, Frank Bobalek was not entitled to damages at all unless the jury found the defendant guilty as charged in Counts II, IV or VI of the complaint; but that the instruction did not so inform the jury and that it was therefore error for the court to give it.

In reply, the plaintiffs urge that the instruction does not direct a verdict, as contended by defendant, and point out that the instruction, after telling the jury if they believed the defendant guilty as charged in the complaint or some count thereof, in determining any damages Stephen Bobalek sustained "you *may* consider if shown by the evidence the following." After enumerating the elements of damage which they should consider in arriving at any damages they awarded Stephen Bobalek, the instruction continued "and assess such damages, if any, in favor of Stephen Bobalek . . . as shown by the evidence, if any." And it is urged that an instruction telling a jury they *may* consider and assess, or *may find* certain things does not command them to do so, nor direct a verdict, of damages. (Citing *Bernier v. Illinois Cent. R. Co., supra.*) Counts II and IV stated all the elements for a cause of action against the defendant in favor of Stephen Bobalek, and plaintiffs suggest that the jury show by their respective verdicts, and the answer to the special interrogatory that they understood the instruction; that they understood there were two causes of action set up in the complaint. They were told by plaintiffs' instruction No. 1

in which counts of the complaint were the charges of Stephen Bobalek's claim against the defendant, and what Stephen's claim was. (*Liska v. Chicago Rys. Co.,* 318 Ill. 570.) And it is urged that this court will presume that the verdict in favor of Stephen Bobalek was based on one of the counts in which the claim of Stephen Bobalek is set forth. (*Chicago City Rys. Co. v. Foster,* 226 Ill. 288.) The jury were told, by plaintiffs' instruction No. 1, of the charges against the defendant to be found in the complaint, and summarized in that instruction, and in the instruction in question the jury were left to determine whether the defendant was guilty as so charged, and if they found him to so be guilty they then were told in the instruction how to determine Stephen Bobalek's damages. Plaintiffs further state that it is unreasonable to say that a jury may not be told they should consider the state of repair of plaintiffs' automobile before the alleged damage; that while that is not the only element it is one to be considered; and that there is no other way by which the jury could determine whether the repairs were necessary. The jury's award to Stephen Bobalek appears to have been based on the doctor's bills, the repair bill for the car, and the hospital and surgical bills which the evidence show were necessary and reasonable, to which no objection was made, and the instruction by telling the jury they must determine same by the evidence only meant to the jury that they must believe such damages proven by the evidence. When we carefully consider this instruction, there is no such error as would warrant a reversal of the judgment.

Next we must consider plaintiffs' given instruction No. 4. This instruction told the jury that they were not required to accept the testimony of a witness as to any facts or circumstances testified to by a witness which the jury believed to be inherently improbable. It is urged by plaintiffs that, naturally, intelligent men would understand that facts, other than improbable facts testi-

fied to by the witness, should receive the same credit as any other testimony given. The instruction does not tell the jury to disregard the whole of the witness' testimony even though they may believe some of the facts the witness testified to were inherently improbable, as urged by defendant. The effect of this instruction seems to be to tell the jury to regard such part of the testimony as they believed, and we are of the opinion that it was not misleading but informed the jury as to the weight to be given to a witness' testimony if they believed any part thereof knowingly or wilfully to be false.

As to plaintiffs' given instruction No. 5, it is urged in support of the instruction that men of average intelligence would understand this instruction only to mean if they found the defendant guilty of the negligence as charged as to each of the plaintiffs that any damages shown by the evidence must be assessed for the respective plaintiffs separately. It would appear that this instruction only instructed the jury as to the manner of treating the respective plaintiffs' claims. The phrase "sustained by reason of the acts of the defendant as charged" is equivalent to saying if the defendant's acts were the proximate cause of the injury or damage. (*Central Rys. Co. v. Bannister,* 195 Ill. 48.) So, under the circumstances, we are satisfied that the instruction was not erroneous.

As to plaintiffs' given instruction No. 6, plaintiffs argue that it is not mandatory or directory, and cite *West Chicago St. R. Co. v. Scanlan,* 168 Ill. 34, where complaint was made of an instruction telling the jury "that if they find from the evidence, that the plaintiff has made out his case by a preponderance of the evidence as laid in his declaration then the jury must find for the plaintiff." The court there said that "The objection that it is mandatory is without force." It is urged that the words instructing the jury "that if they believe from the greater weight of the evidence that the defendant was guilty of the negligence charged, and

that in consequence of such negligence" etc., referred the jury to the negligence charged in the complaint of which they were told in plaintiffs' instruction No. 1; that the various counts of the complaint state the necessary elements of a cause of action for each plaintiff's claim, and by said instruction the jury were told these charges were contained in the complaint; and that the jurors reasonably would only understand by the instruction in question that they must first determine from the evidence whether the defendant was guilty of the negligence as charged in the complaint, and then determine also if the plaintiff, Frank Bobalek, a minor, and Stephen Bobalek, Jr., agent of the plaintiff Stephen Bobalek, were in the exercise of due care, and whether or not the injury and damages were a consequence of the defendant's negligence as charged in the complaint, and that they must determine from the evidence whether the expenses enumerated, of Stephen Bobalek were reasonable, and customary, and necessary. If they believed all these things to be true from the evidence they were told they should find for Stephen Bobalek. We are of the opinion that this instruction, likewise, is not subject to the objections made by defendant.

Then, as to plaintiffs' given instructions Nos. 7 and 10, criticism is made by defendant. Instruction No. 7 instructed the jury as to a statute in force in Chicago and Illinois regarding signals to be given by a driver of an automobile when intending to turn left. Instruction No. 10 instructed the jury with reference to the turning of an automobile, or intending to turn without giving a suitable signal to others who might be affected by his turning. Instruction No. 7 is not directory, as contended by defendant. It told the jury to determine from the evidence and instructions whether the defendant turned his automobile from a direct course while the plaintiff's automobile was in a position where it could be affected, and they were further told to determine from the evidence whether the defendant then and

there gave a signal and warning of his intention, and whether or not Frank Bobalek was in the exercise of due care, and further to determine from the evidence whether by reason of the defendant so operating his automobile Frank Bobalek sustained injuries. The instruction is not erroneous.

Plaintiffs' given instruction No. 8 is as follows:

"If you believe from a preponderance of the evidence that the defendant was guilty of negligence as charged, and in consequence of such negligence as charged, and in consequence of such negligence the plaintiff, Frank Bobalek sustained bodily injuries as charged, and that the plaintiffs, Frank Bobalek and Stephen Bobalek, his next friend, were at, and immediately before, the time in question exercising reasonable care and diligence for Frank Bobalek's own safety, and the safety of others, and their property, then you should find for the plaintiffs." It is urged by plaintiffs that the instruction is not directory or mandatory; that it left to the jury to determine from the evidence whether the defendant was guilty of the negligence as charged; and that plaintiffs' instruction No. 1 advised the jury of the charges of negligence of the defendant, due care of the driver of plaintiff's car and of plaintiff Frank Bobalek, of the charges of injury to Frank Bobalek by reason of defendant's negligence, and the damages of Stephen Bobalek for necessary hospital bills and medical care, etc., found in the complaint. It was left to the jury to determine from the evidence whether these facts were proven, and they were told if they believed these facts proven, then they should find for the plaintiffs. As to plaintiffs' instruction No. 11, the rule seems to be that it is only when the passenger can be of help, or it comes to his attention that the driver does not see, or cannot see, that negligence may be imputed to the passenger. The jury could observe Frank's intelligence, experience and could understand the instruction to mean nothing more than that they were to measure his care by the matters stated

therein. We are of the opinion, therefore, that plaintiffs' given instructions Nos. 8 and 11 are neither of them erroneous.

Upon consideration of all the objections and suggestions made relative to plaintiffs' given instructions, and the authorities cited, we are of the opinion that nothing has been called to our attention which would justify a reversal of the judgments entered in this case.

The defendant contends also that the trial court erred in his instructions to the jury concerning the verdicts they might return and in failing to give to the jury proper and sufficient forms of verdict. With reference to the verdicts, the trial court orally instructed the jury as follows: "If you find the defendant guilty as to the plaintiff Stephen Bobalek you will sign this:

" 'We the jury find the defendant guilty and assess the damages of Stephen Bobalek in the sum of ————' whatever dollars you may arrive at.

"If you find for the plaintiff Frank Bobalek, a minor, you will sign this verdict:

" 'We the jury find the defendant guilty and assess the damages of the plaintiff Frank Bobalek, a minor, by Stephen Bobalek, his next friend, in the sum of ————' whatever dollars you arrive at.

"If you should find the defendant not guilty you will sign this verdict:

" 'We the jury find the defendant not guilty.' " These three forms of verdicts were the only forms given by the trial court to the jury. The plaintiffs' contention, in reply to defendant's suggestions as to the forms of verdict given to the jury, is that it was not the plaintiffs' theory nor was the case tried on the theory that if defendant was guilty as to Frank Bobalek he was also guilty as to Stephen Bobalek; that the jury were fully instructed by the instructions of plaintiffs as well as defendant that each of the plaintiffs had a claim, and each must prove his claim; that it may have been proper for the court to have submitted an additional form of

verdict regarding finding the defendant not guilty as to either plaintiff; but that the omission is not reversible error.

Moreover, the defendant did not request the court to give an additional form of verdict. The plaintiffs further urge, and correctly we think, that treating the instructions as a series it is not conceivable that a jury of average intelligence did not understand that there was a claim of each of the plaintiffs for different damages, Frank Bobalek for injuries, and Stephen Bobalek for doctor bills, hospital bills and expenses furnished to Frank, a minor, and damages to Stephen's automobile; that the defendant's liability for each of said claims was proximately caused by the same acts of negligence of the defendant; and that clearly the jury would have been able to have formed a verdict finding the defendant not guilty as to either plaintiff, had such been their finding, so the defendant could not possibly have been prejudiced by the court's omission. Under all the circumstances, we are of the opinion that the court was not in reversible error in submitting the forms of verdicts as were submitted in this case.

There are other questions called to our attention but upon consideration of all the questions involved we are of the opinion that there is no reversible error in this record. The respective judgments in favor of plaintiffs will, therefore, be affirmed.

*Judgment affirmed.*

BURKE, P. J., and KILEY, J., concur.