Muriel Turner, Plaintiff-Appellee, v. Dean Schaeffer, Defendant-Appellant.

**Gen. No. 11,453.**

Second District, First Division.

May 6, 1961.

Rehearing denied June 5, 1961.

377

Peterson & Johnson, of Princeton, for appellant.

Andrews & Andrews, and D. J. McRae, of Kewanee, for appellee.

SMITH, P. J.

By this appeal we are asked, for the first time in this state, to articulate the elements making up willful and wanton misconduct in a situation where the driver goes to sleep at the wheel and injures a guest. The facts are important.

Both plaintiff and defendant are young people. They had been going together for about a year at the time of the accident sued on, which occurred shortly after midnight on Thanksgiving Day, 1958. Defendant, that evening, called for plaintiff around 8:30 at her home in Mineral, Illinois, having driven over from Tampico where he lived—about a fifteen minute drive. Together they drove to Wyanet—about fifteen miles—to attend a dance. Both had worked that day, she at a bank, and he at a door factory in Sheffield. Defendant went to work at 7:00 A. M., having arisen between

5:30 and 6:00 A. M. He did not get off until 7:00 P. M. He had lunch at the factory, but does not recall whether he had supper at home prior to driving over to plaintiff's home. They had been together on the two previous evenings and his hours of sleep in each instance had been limited to about five or six hours. They arrived at Wyanet around 9:00 P. M. and stayed there until shortly before 12:30 A. M. when plaintiff told defendant she was tired and accordingly they departed for her home. Plaintiff went immediately to sleep in the front seat. Defendant's car was in good condition, the night clear and the weather good. He remembers a canal bridge about two miles west of Wyanet, but he remembers nothing beyond that point until just a second or two prior to the accident he saw a bridge over a culvert at the same time his car was veering to the left into the wrong lane and onto the shoulder, where after leaping a ditch, it struck an embankment and came to rest causing plaintiff's injuries. The scene of the accident is eleven miles west of the canal bridge near Wyanet. Whether his lack of memory can be ascribed to dozing from the canal bridge to the scene, or was attributable to a retrograde amnesia, is a question of fact, as there was evidence both ways. Plaintiff was asleep, as we have said, and knows nothing of the events leading up to the accident. Defendant "doesn't know for sure" whether he was dozing off or not as he approached the culvert. In a deposition he stated: "I guess that's what I think happened", and before a justice of the peace he said, "he knew he went to sleep, or he was reasonably sure". To the State Trooper who investigated the accident he said he "fell asleep", and to a doctor who was attending plaintiff within a short time after the accident he stated almost the same thing. The gist of his remembrance of things past is:

379

> "With reference to whether that actually happened, so far as I am concerned, I didn't feel sleepy, but I don't know of any other explanation. I don't know whether I fell asleep. I believe I told them I thought that is actually what happened. I believe what happened is that I fell asleep."

That defendant did fall asleep is inferably evident and reasonably so, although we do not consider these various statements as direct and positive admissions that he did go to sleep. There is likewise no direct admission by him that he knew he was going to sleep or was being "overcome by sleepiness", or indeed any direct evidence by plaintiff that he or she had any warnings or prior awareness that sleep was coming on, if it did, whatever may be the reasonable inferences from all the circumstances that triers of the fact might justifiably infer. Plaintiff testified that during the evening he displayed no observable signs of being sleepy, and that the usual harbingers heralding the approach of sleep were singularly missing. At least nothing untoward sparked admonitions on her part. Whether in his own mind he should have taken note of this condition, if it existed, and did not, thus failing to exercise his judgment, or conversely, recognized the condition and then exercised his judgment erroneously, are, or could be, questions of fact.

To summarize, plaintiff considered his mental condition to be one of alertness, indeed, she testified she would not have driven home with him had it been otherwise, and he likewise considered himself to be in full possession of his faculties at the time they left the dance. Whether or not he went to sleep sometime after passing the canal bridge and was asleep just prior to the time he left the pavement, is, on his part, a supposition, although it may be a perfectly valid one. We do know that plaintiff was tired, be-

cause she said so, but whether or not defendant was pacing her in this respect, was a fact unknown to her, and certainly so far as direct evidence is concerned, unknown to him, whatever inferences otherwise might reasonably be raised from all the attendant prior circumstances.

Plaintiff's complaint under the Guest Statute, Par. 9–201, Chap. 95½, Ill. Rev. Stat., 1957, charges defendant, as it must, with willful and wanton misconduct, in leaving the highway, driving at an excessive rate of speed, failing to keep his car under proper control, losing control, driving on the wrong side of the highway, and failing:

> "to exercise proper care by continuing to drive when overcome by sleepiness and did fall asleep and in consequence thereof said automobile crossed the highway and crashed into the embankment as aforesaid."

We quote the last averment not only because it goes to the heart of the case, but because some question has been raised as to its meaning, as will be hereafter discussed. Defendant answered by flat denials, thus making up, in our view triable issues. Defendant's motion at the close of all evidence for a directed verdict was denied, but plaintiff's motion in this respect was allowed, and the case submitted to the jury on the issue of damages only, as to which they found for plaintiff in the amount of $18,000.00. Post-trial motions by defendant were overruled and this appeal follows.

■ The briefs present many issues, but only one warrants extended discussion, and we will limit ourselves to that as it is controlling in our view. This single issue involves the propriety of directing a verdict for plaintiff. In directing a verdict for plaintiff, the trial court was necessarily holding as a matter of

law that plaintiff had established a case of willful and wanton misconduct, and defendant had failed to establish any defense thereto, and in consequence nothing remained for triers of the fact to ponder and decide. We can eliminate the allegations other than the one quoted above relative to being overcome by sleepiness, for surely jury questions were presented if the defendant was awake. If he was asleep, these acts could not constitute willful and wanton misconduct, for a person cannot be guilty of such conduct if he is asleep or unconscious. The reasoning behind this is simply that any action of a driver after he has lost consciousness is not a voluntary one, so that the stigma of fault does not attach. This presupposes, of course, that before the operator can be exonerated, the evidence must have been sufficient to prove a sudden loss of consciousness with no anticipatory warnings. In 9 Western Reserve Law Review 199, in an article entitled "Liability of the Unconscious Driver", it is said:

"As pointed out previously, the almost unanimous holding in the United States in that without anticipatory warning, the sleeping, unconscious or epileptic driver is not liable for his tortious conduct (28 ALR 2d 1, 1953); the Courts have had notably little difficulty here since they apply the general rule that liability for unintentionally causing a physical injury can only be predicated upon a failure to live up to a social standard of due care."

Our focus can thus be sharpened to dealing with the problem of whether the evidence relative to sleepiness mandated a holding that no issue of fact remained for submission to the jury.

■ While there is quite a bit said in the briefs as to the exact meaning of plaintiff's paragraphs rela-

tive to sleepiness, we take it to mean, and indeed it must mean, that defendant had, or should have had, some fore-knowledge or awareness at some point in time before he went to sleep, if he did, that he was being overcome by sleepiness. The charge is that defendant, *"continuing to drive* when overcome by sleepiness, and did fall asleep", and we think that a fair reading of this text, when read in the context that an awareness must be or should be present, spells out a charge, in essence, that defendant in continuing to drive knew, or should have known, that sleep was nigh, and that he then "did fall asleep". If this is so, then defendant's denial makes up a triable issue of fact, and indeed it did.

That some fore-warning of the likelihood of sleep is, or should be present, as a prerequisite to a showing of willful and wanton misconduct in "sleep" cases needs further explanation, for the Illinois cases to date arise in procedural situations that did not mandate direct enunciation that such is required, although we read them to that effect and purport. We refer to Barmann v. McConachie (1937) 289 Ill. App. 196, 6 N. E. 2d 918; Marks v. Marks (1941), 308 Ill. App. 276, 31 N. E. 2d 399; Secrist v. Raffleson (1943), 326 Ill. App. 489, 62 N. E. 2d 36; and Phillips v. Interstate Motor Freight System (1942, DC Ill) 45 F. Supp. 1. A short review of these cases will be of aid.

In Barmann the complaint alleged that the defendant being tired, exhausted, and sleepy, knew and was conscious of the fact that he was about to fall asleep and, being conscious that if he did fall asleep, it would probably result in injury to others, willfully and wantonly drove his automobile and fell asleep, thereby losing control of his automobile and injuring plaintiff. The facts were not in dispute, and are not dissimilar to the factual situation presented in this case. The defendant there was the only witness whose

evidence bore upon the cause of the accident, and as here, both parties were young people, who had been attending a dance, but unlike the defendant here, after leaving the dance about 12:00, and after the plaintiff had gone to sleep, he realized he was sleepy, and admitted that he "felt at that time as I ordinarily feel when I am about to go to sleep", after which the crash occurred. He further testified substantially as follows:

> "When I became sleepy I judge we were about four miles north of town and between a half a mile and a mile from the place of the accident. I kept driving because I thought I could make the rest of the way. I did not intend to go to sleep."

Relative to this admission and in affirming the judgment rendered on the verdict of the jury, the court said:

> "Defendant says he knew that plaintiff was asleep and that he was aware of the possibilities of an accident if he went to sleep while driving. With a knowledge of these things, he becomes conscious of the fact that he is sleepy. He is then driving at 40 miles per hour. He undertakes the struggle with himself of keeping awake until he can reach Moffat's, a distance of 2 or 3 miles. Of course in so doing he did not intend that plaintiff should be injured by reason of his act, but his conduct showed such an intentional disregard of the duty that rested upon him to exercise care and such a conscious indifference to the consequences that might follow from his act that the jury could readily find him guilty of willful and wanton misconduct."

Quite obviously the holding in Barmann leaves little room for doubt that there must be some conscious pre-

awareness of approaching sleep, although it is not so much explicitly decided as implicitly assumed. Elaborating on this implicit assumption with respect to a somewhat intricate and ingenious argument by defendant that in the nature of things oncoming sleep renders errors of judgment probable and that his failure to judge correctly of his ability to resist sleep was an error of judgment that would not support a finding of willful and wanton negligence, the court's short rejoinder was:

> "Defendant's act did not arise from an error of judgment. It came about by reason of his failure to exercise judgment. He permitted himself to go to sleep while driving, and an act of omission may be made the basis of willful and wanton negligence, the same as an act of commission."

In the Marks case there is no averment of any conscious knowledge that sleep might ensue, only that allegation that because defendant was asleep, he lost control of his car, causing plaintiff's injuries, and that such was willful and wanton misconduct, but the evidence supplies, what the averment lacks by way of demonstrating a case of willful and wanton misconduct. We quote the court's conclusion thereon:

> "In the instant case, the evidence shows that the plaintiff and defendant were sleepy and tired. Defendant admits that to be true as does the plaintiff. The attendant at the gasoline station also testified that the two men appeared to be very tired and sleepy and he warned them to be careful. Defendant knew that he was sleepy and was apt to fall asleep while driving, yet he took control of the automobile and drove until he actually fell asleep which resulted in the accident whereby plaintiff was injured."

385

In Marks, the court cites the above excerpt from Barmann, and concludes that the finding of the jury that defendant was guilty of willful and wanton negligence was supported by the law and the evidence. Again, it is not explicitly held that premonitory symptoms must exist, or should have existed, but the evidence was certainly to that effect, and when viewed in connection with the court's quotation from Barmann, that in continuing to drive and permitting himself to go to sleep an act of omission occurred which would support a finding of willful and wanton conduct, we can come to but one conclusion, that a requirement of some warning of sleepiness must be present or could have been present, as a matter of law to support such finding.

The Secrist case is not as clear as one might desire on this point, though it cites Barmann and Marks with approval. Notwithstanding, there were admissions by defendant's intestate that "the accident was caused by his falling asleep"; that "he went to sleep, and that is how they got hurt"; that "I went to sleep", and that "he had fallen asleep while he was driving the car". From a review of the evidence the court concluded that the jury properly found that the deceased was guilty of willful and wanton misconduct. Whatever this holding may lack in explicitness as to the necessity of premonitions of sleep, it is apparent, if anything, that it is authority for the proposition that even absent a clear showing of such symptoms, a jury question is presented. Indeed, the lack of any direct proof of conscious awareness of onrushing sleep, and nothing but the fact that the deceased fell asleep, and that a jury could properly conclude guilt of willful and wanton misconduct therefrom, is authority, with reverse English, that the court here erred in taking the case from the jury, for it is apparent, that if the evidence in the Secrist case is

386

enough to go to the jury, it should have gone here. Whatever may be the correctness of Secrist in its particular setting, it is not and cannot be construed as a holding that an awareness of sleep in some form need not be shown. To the extent that it does, if at all, we do not view it as authority.

In Phillips, again, there is no direct holding, the willful and wanton counts being dismissed for other reasons, but we find the court wondering out loud:

> "It seems to me that there may be some question (I have not considered same in light of any authorities) as to whether the mere fact that the driver of a motor vehicle falls asleep while driving can form the basis of a willful and wanton count in any event, or, at least, without some additional facts."

■ Driving while asleep, without more is not negligence although it is a proper basis for an *inference* of negligence, but as to willful and wanton misconduct it is not even that. The rule we believe in regard to Guest Statutes like the one here involved is aptly summed up in 28 ALR 2d 12, 25, where an exhaustive annotation on this general subject appears:

> "Where the guest statute limits the liability of the operator of a motor vehicle to wanton or willful misconduct, the cases unanimously agree that the mere showing that the driver went to sleep at the wheel, without more, is not by itself sufficient to carry the issue of the driver's wantonness or willfulness to the jury, since the mere fact of falling asleep, without more, does not prove such a marked disregard for the safety of others as to amount to willfulness or wantonness. However, it cannot be said that falling asleep at the wheel while driving can never, and under no circumstances, constitute willful or wanton conduct,

387

since the fact that the driver *continued to drive under circumstances which made it apparent that he recklessly disregarded the premonitory symptoms of sleep obviously manifests* such a willful and wanton disregard for the safety of others as to render the driver liable under the guest statute. Generally speaking, it may be said that the requirement of the guest statute will be held as fulfilled where the driver was aware of the likelihood of his falling asleep and showed a conscious indifference to the consequences that might follow from his act, while he will be absolved of liability where such circumstances are not present."

■ Willful and wanton misconduct, like all definitions for standards of behavior, has been defined and redefined, and we will not attempt to repeat all of them, for a great many are fully set forth in the Barmann case. We limit ourselves to defining it, as it is defined in Illinois Pattern Jury Instructions, Sec. 14.01, as meaning a course of action which, if not intentional, shows an utter indifference to, or a conscious disregard, for the safety of others.

■■ With this definition in mind, we are compelled to the conclusion by what we have said, and the authorities heretofore cited, that something more than the limited fact that a driver of an automobile went to sleep must be shown to prove an utter indifference to or conscious disregard for persons riding with him. Accordingly, we hold that sleep standing alone, unheralded and unannounced, with no foreknowledge or awareness by the driver that his consciousness is being blunted or proof that such should have been in his mind, will not furnish a basis for a finding that such misconduct is present. A showing limited to just this, must needs be, in the nature of things, probably hypothetical. Sleep generally does not come on one totally unawares though the

warning may be ignored. We speak commonly in the first person of 'going', 'falling', or 'sinking' into sleep; sleep itself 'approaches', 'engulfs', or 'comes on', active verbs denoting the passage of time, of some prelude to the final act of sleep—"death's counterfeit". The duration of the immediate passage, and what therein transpires, indeed, the events preceding the passage, are relevant circumstances material to the issue of the existence or non-existence of premonitory symptoms, that would serve if found as a basis for a finding that a given driver fell into the definition of being willful and wanton. It is peculiarly a factual question to be decided by triers of the fact, not by judges of the law. We have, at least, no hesitancy in saying here that a jury question was presented, because there was evidence that raised inferences pro and con, relative to premonitory symptoms, and sleep itself.

■ It is a truism that we judge ourselves by our intentions, others by their actions. Defendant's stated intentions as to his capacity to drive, must be weighed in the balance with his actions on that day, or even preceding days. One can be guilty of willful and wanton misconduct not only from an error of judgment, but from a failure to exercise judgment, as we have seen from our quotation from the Barmann case. Quite obviously in the Marks case, where the evidence was that defendant knew he was sleepy, and in the Barmann case too, the act of the defendant in continuing to drive was an error of judgment. But absent these manifestations of intention, the activities preceding sleep, such as a sustained period without sleep, strenuous activity, long hours of work, over indulgence in food and drink, even prior similar occurrences evidencing a congenital predisposition to fall suddenly to sleep, might call for the exercise of judgment, and the failure to do so, could evidence willful and wanton misconduct.

■ If one omits to make a judgment, he is in no better position for exoneration, than one who makes a judgment, but makes it erroneously. Assuming that defendant did fall asleep, and assuming further that the more obvious warnings were absent, still, because of a lack of sleep, a long day at the factory, the lateness of the hour, the lack of food, and indeed the sleepiness of his partner, could it not be said, because he did not take heed of these facts, that he omitted to make a judgment, and conversely, that these facts behooved him to make one, independent of being jarred by some inward manifestation, such as nodding, or outward manifestation, such as a warning from others. Somewhere along the line, triers of the fact could properly conclude that note should have been taken by him, and self-inquiry made. They could also properly conclude otherwise. As was said in Lindroth v. Walgreen Co., 338 Ill. App. 364, 87 N. E. 2d 307, 312, ". . . where uncertainty arises as to the inferences that may legitimately be drawn from the evidence so that fair-minded men may honestly draw different conclusions, the question is not one of law, but one of fact to be settled by the jury." This being so, and it is true in this case, the court erred in directing a verdict for plaintiff on the question of liability. It did not err, as defendant argues, in not directing a verdict for him. The judgment is therefore reversed and remanded for a new trial.

Reversed and remanded.

McNEAL, J. and DOVE, J., concur.