Robert L. Brown, a Minor, by Mamie Brown, His Mother and Next Friend, and Arnold Brown, Plaintiffs-Appellees, v. Donald McColl, Defendant-Appellant.

Gen. No. 11,533.

Second District, First Division.

June 25, 1962.

Maynard & Maynard, of Rockford (James F. Maynard, of counsel), for appellant.

Pedderson, Menzimer & Conde, of Rockford (Dale F. Conde, of counsel), for appellees.

SMITH, J.:

Early in the morning on May 15, 1958, Robert Brown, one of the plaintiffs, a boy of sixteen years, hitched defendant's farm tractor to a rack, placed his collie dog thereon, and went down the road to get some pea vines. This was one of his morning chores. The road was high-crowned, blacktop, with sloping grass ditches, and on that morning, dry and devoid of traffic. He proceeded at top speed—10 to 12 m.p.h.—in spite of the fact that he knew the left brake was defective. A bit down the road, his dog spied a rabbit and began to bark, as dogs will. Robert looked back, as boys will, to see what the dog was barking about. At that instant, the tractor began to leave the blacktop. In attempting to regain the road, he turned the wheel and went through the motions of applying the brake. The brake didn't hold; the tractor turned over, pinning him beneath. The jury awarded him $1,000, and his father $5,500 for his expenses. With regard to the brake condition, the same had existed for several months before the accident. Robert, while knowing of the condition,

continued to operate the farm tractor, but did call it to the attention of defendant on a number of occasions. So did Robert's father. Defendant assured both of them that he would have it fixed, or so they say. Defendant denies this. However, he posits contributory negligence as a matter of law, and we are thus permitted to view the testimony in the light most favorable to Robert.

Boys of sixteen are expected to exercise the care and caution of boys of that age. What we might expect of Robert at twenty-one, or at any other age, is immaterial. The fact that he knew the brakes were faulty, the fact that he was going at top speed, the fact that he momentarily looked back, does not establish contributory negligence on his part as a matter of law. The road was dry, he had been there before without mishap, and traffic was absent. Is it throwing caution to the winds to operate a farm tractor with a bad brake under these conditions? The answer is uncertain, because the inferences are uncertain, and where the inferences are uncertain, so that fairminded men may honestly draw different conclusions, a question of fact is presented. Turner v. Schaefer, 30 Ill App2d 376, 174 NE2d 690. We hardly think we are in a position to say categorically that Robert's injury was caused in part by his negligence. If we cannot do so, then we cannot say that this was not a proper issue for the jury.

Russell v. Halyama, 27 Ill App2d 359, 170 NE2d 8, also involved an action by a farmhand against his employer for injuries sustained as the result of the alleged negligence of the employer in furnishing him with an unsafe and defective cornpicker. Contributory negligence was there urged as a bar. We quote:

> "Even though the farm worker knows of the defect, if the employer directs him to continue to use the appliance and the defect is not so glaring as to amount to a disregard of all prudence by the em-

218

ployee, the question of the employee's contributory negligence is a question of fact for the jury."

Defendant says, however, that in any event recovery is barred because Robert assumed the risk of the injury that befell him. In other words, one of the risks of working for defendant was the risk involved in operating a tractor with bad brakes. Thus, defendant argues that when an accident resulting from the defective brake did befall Robert, he is in no position to complain, at least legally. The doctrine has had many enunciations, one of which is as follows, from Montgomery Coal Company v. Barringer, 218 Ill 327, 75 NE 900:

"The theory upon which those cases proceed is, that when the servant has full and complete knowledge of the condition of the implement which he is using or the place in which he is doing work, and no special knowledge is required on his part to apprise him of the danger which he incurs while using such implement or working in such place, he will be presumed to have assumed the risk of being injured from the use of such implement or while working in such place, and that in case of injury, the master, by reason of such assumption of risk is not liable."

Assumption of risk cases are getting to be a rarity nowadays. One area where they still persist is on the farm. The doctrine finds its parentage in the law of contracts, while contributory negligence was conceived in the law of torts. Hammer v. Slive, 27 Ill App2d 196, 169 NE2d 400. The rule, more simply put than the quotation above, says that when one assumes a known risk, he cannot complain when he loses. This is a fairly understandable concept and consonant with conditions necessarily imposed by being alive. As Mr. Justice Cardozo once remarked, "The timorous may

219

stay at home," meaning that once you go outside, you assume certain risks. Murphy v. Steeplechase Amusement Co., 250 NY 479, 166 NE 173. But this rule of law, as all good rules, has its exceptions, or if this characterization is not exactly apt, its ramifications.

The ramifications arise in determining with some precision the meaning of the very words used in describing the concept or rule—assumption of risk. Take the word "risk." To assume a risk means knowledge of the risk. One cannot assume a risk he knows nothing about. All men would agree that there is a risk implicit in bad brakes. Robert did have knowledge of the brake condition, but we judge the extent of his knowledge of the risk in the light of his youth. The risk to him might not be as clearly perceived as by one older and more experienced. One might know of the defect, but be unaware of the risk attendant thereto. Or if aware, imperfectly aware. Sixteen-year-old boys are different from twelve year olds, and both are different from adults. Indeed, sixteen-year-old boys can and do differ. One may have had experience with tractors, another not. With the former the assumption of risk is greater, with the latter, much less, if at all. The point is that Robert's true assumption of the risk implicit in bad brakes is a question of fact. We can no more categorically say that he assumed this risk, in its true sense, than we can say that he was contributorily negligent. Again, the inferences are uncertain.

 A further ramification or facet obtrudes itself. What is meant by the word "assumption." One might be said to have, or be charged with having, a sufficient knowledge of a given risk, and still not be charged with having assumed it if he had no choice. Obviously, if one is ordered to do something, and he has absolutely no choice but to do it, it cannot be said that there has been any true assumption of any risk or risks that might be present, regardless of whether

220

he knew about them or not. On the contrary, in the context of the doctrine, he has assumed nothing. Without getting too abstract, assumption presupposes choice, and choice presupposes free will, or at least some degree of volition. Not in an absolute sense, of course, but reasonably related to the circumstances. Robert, of course, could have refused to be up and doing that May morning, but he *was* under a contract of hire. To pick up pea vines was one of his morning chores. Being under a duty to perform this chore, there was a constriction of volition. His employer, admittedly, was not in the same position as the centurion in the Bible who said to his servant, "Do this, and he doeth it." And Robert most assuredly was not in the position of the servant. But to bring the matter closer to home, a true assumption of risk, where the law of employer-employee impinges, depends to a great extent, on factual questions directly connected with such relationship. Robert did have a choice, but his choice was limited. Indeed, because of his youth, he may have more compunctions than one much older. At sixteen, he may have believed that he had no choice. Youth to age does bow, even where there may be no contractual relationship.

In Corn Products Refining Co. v. Cherry, 140 Ill App 1, quoting from Chicago & E. I. Ry. Co. v. Heerey, 203 Ill 492, 68 NE 74, it was said:

> "Where by the order of the master or one standing in that relation, the servant is directed to encounter a danger, and his duty being that of obedience, he does not assume the risk. In the case of a promise to repair or of a command, and perhaps some other cases, the question is one of contributory negligence on the part of the servant, depending upon whether the danger was so great that an ordinary prudent person would not have en-

countered it . . . . The employee must always exercise the degree of care which an ordinary prudent person would have exercised under the same circumstances, but he does not assume the risk resulting from a direct command."

In the same vein, is Horstman v. Staver Carriage Co., 153 Ill App 130. We quote:

"If plaintiff was ordered to do the work as claimed, and machinery furnished for the purpose of doing such work was defective or out of repair, and the hazard assumed in obeying the order and doing the work was not so imminent that a person of ordinary prudence would not have incurred the risk, then the doctrine of assumed risk has no application."

We have an added factor to consider—the promise by defendant that repairs would be forthcoming. In Russell v. Halyama, 27 Ill App2d 359, 170 NE2d 8, referred to above, not only was contributory negligence urged as a defense, but alternatively, as here, the assumption of risk by the employee in operating a defective cornpicker. There, too, the plaintiff not only had knowledge of the defect and informed his employer, but was advised that it would be repaired, and to continue picking corn. With regard to the aspect of promises to repair, the court said:

"Under the facts before us the operation of a defective piece of equipment by an employee after he had requested that it be repaired and was assured by his employer that it would be repaired, makes inapplicable the assumption of risk theory."

This factor, of promises to repair, when coupled with the employment relationship, and the extent of knowledge possessed by Robert in perceiving the risk, are

clearly questions of fact, properly presentable in determining the applicability of the doctrine. Initially, such contractual relationship creates a factual context in which doctrine comes into its own as a proper defense. However, through the relationship itself creates the context for the doctrine's invocation, the circumstances of that relationship, can negate its acceptance. There is more to the doctrine than simply showing a contract of hire. Factual questions were presented at every turn. Of course, factual questions can become legal questions when the facts lead to one inexorable conclusion, but this is not so here. As we have said, the inferences are uncertain, the defendant's argument that the court below should have granted him a directed verdict on this score is not well taken.

 That the case should have been taken from a jury, or judgment rendered notwithstanding the jury's verdict, is the way this question reaches us. The jury presumably never considered the matter, for there was no instruction on the doctrine. Plaintiff did not tender one, and defendant's instruction on the subject was refused. This refusal is assigned as error, but the instruction submitted was an inadequate statement of the law under the facts of this case. Defendant did not tender a second one. Thus, while the jury should have been instructed on the matter, it was defendant's duty to tender a proper instruction, and in not doing so, he cannot complain. Defendant directs our attention to one of plaintiff's instructions, but since he made no objection to it at the time it was tendered, we will not consider the point he raises. The judgment appealed from is affirmed.

Affirmed.

DOVE, P. J. and McNEAL, J., concur.