Fred Dursch, Plaintiff-Appellee, v. Anthony R. Fair, Defendant-Appellant.

Gen. No. 64–159.

Second District.

July 23, 1965.

275

Knight & Knight, of Rockford (William D. Knight, Jr., of counsel), for appellant.

Cannariato, Nicolosi & Pigatti, of Rockford (Sam J. Cannariato, of counsel), for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

This is an appeal from a judgment against the defendant, Anthony R. Fair, in the sum of $27,500 entered on a jury verdict, for personal injuries to plaintiff, Fred Dursch, allegedly caused by the wilful and wanton conduct of the defendant.

The amended complaint charged that the defendant operated a car on the Northwest Tollway in McHenry County on March 28, 1963, at 6:50 a. m., in a westerly direction, at which time the plaintiff was a passenger; and that the defendant, knowing himself to be sleepy, did, wilfully and wantonly continue to drive his automobile at a time when he knew that the plaintiff was asleep, and did either fall asleep while driving his automobile and did run into the rear of a trailer truck; or in the alternative, that the defendant wilfully and wantonly drove his automobile, while awake, into the rear of a moving trailer truck, colliding with said trailer truck.

Said complaint alleged plaintiff's freedom from wilful and wanton conduct; charged such conduct on the part of the defendant, and asserted that as the direct and proximate cause thereof, plaintiff was injured. The injuries were stated generally and alleged to be permanent in nature. The complaint also alleged pain and suffering, loss of employment and the incurring of medical expenses by plaintiff; the ad damnum prayed was $100,000. The answer denied all of the allegations of said complaint.

The defendant's theory of the case was that the court erred in not directing a verdict for him and in failing to arrest the judgment. The thrust of this

charge was that there was neither a pleading nor evidence to sustain the verdict. The defendant further urged that the collision was an unavoidable accident; that the plaintiff was guilty of contributory wilful and wanton conduct; that the verdict was against the manifest weight of the evidence; that a statement of plaintiff's counsel constituted a judicial admission which negated any wilful and wanton conduct by defendant; and that the court erred in refusing to give defendant's instructions 15, 16, 21–25 inclusive, and 27, and in giving plaintiff's instructions 8, 9, 13, 14, 15 and 16. The plaintiff's theory of the case was essentially a negation of that of the defendant.

The defendant was 20 years of age; the plaintiff 28, at the time of the accident. On Tuesday evening, March 26, 1963, defendant met plaintiff at a bar in Rockford and thereafter plaintiff drove defendant's 1963 Chevrolet to the MGM Club in Cicero where they stayed until 4:00 a. m. Defendant drove back to Rockford and plaintiff slept from the time they left Cicero until they arrived in Rockford about 7:00 a. m. Defendant worked that day from 8:00 a. m. to 9:00 p. m., and about noon, plaintiff and defendant made arrangements to go to Chicago that evening. They left Rockford about 11:00 p. m. Plaintiff drove to the Playboy Club in Chicago and parked the car nearby. They went to the Club and remained there until about 4:00 a. m., and each consumed six or seven beers.

Upon leaving the Club, they walked to the car. Defendant testified that he was not drunk; was awake, alert, relaxed and did not yawn. He also said that plaintiff was sober, entered the car and sat in the right front seat. Defendant then told plaintiff that he was going to Cicero.

Plaintiff testified that he wasn't completely drunk but that he wasn't in any condition to drive; and that

when defendant stated he was going to Cicero, the plaintiff said: "I am going to sleep, I suggest you do also, maybe we'll get a hotel," and that defendant said: "No, I want to go to the MGM," and plaintiff replied: "Well, I'm going to sleep." Plaintiff's next recollection was awakening two months later in a hospital.

Defendant testified that he drove his car after leaving the Playboy Club, got lost in the loop and was given a ticket by a police officer for driving the wrong way on a one-way street; that he then decided not to go to Cicero, but rather started back to Rockford on the Northwest Tollway; that just beyond the Elgin Plaza he awakened plaintiff, stopped the car and both plaintiff and defendant got out to answer nature's call; that they then resumed the trip home with defendant again driving and plaintiff sleeping. Defendant testified that shortly thereafter he drove the car into the rear end of a truck trailer; that he first saw the trailer when it was 500 to 1000 yards away; and that it likewise was travelling in a westerly direction.

He further stated that the toll road has two lanes for easterly and two lanes for westerly traffic, which lanes are separated by a median strip; that the car he was driving was travelling westerly in the outer (northerly) lane and the trailer truck was also travelling westerly in the same lane; that at the time and place of the collision no vehicles were in the inner lane for westbound traffic; that he noticed no traffic from the rear, and that he had his lights on; that it was dawn—7:00 a. m.; and that he was sober.

The defendant described the accident in these words: "I saw the truck, and I had followed it for some distance. And then as though the truck either stopped or it was—as dim as it was, I seemed to be gaining upon it. In other words, rapidly gaining on it. At this time I looked at the speedometer to see whether or not

279

I was speeding. And by the time I had looked up, the truck was almost on top of me. And I did one thing, I tried to cut to the left. And then I woke up in the hospital."

In response to the question: "Now Witness, isn't it true that just before you struck the truck trailer that you had fallen asleep?", the witness answered: "No." The plaintiff's attorney was then permitted to impeach the defendant by use of a statement which defendant had given on April 12, 1963, wherein, in response to the question: "Were you sound asleep?" the defendant answered: "I must have been sound asleep, either sound asleep, or I didn't see the truck." The defendant stated that he didn't remember making the statement. Defendant's physician testified that on April 12, 1963, the defendant was ambulatory, mentally alert and that the tranquilizers which he was taking would have no effect on his consciousness or mental capabilities.

The evidence revealed that as a result of the accident, the plaintiff suffered shock, a brain concussion, lacerations of the scalp, lip and chin, a fracture of the left femur with multiple lacerations and a dislocation of the right hip. He experienced double vision and, due to crushing injuries to the nerves, was unable to grasp with his left hand. At the time of the trial he was suffering from a calcification of the right hip. His right leg continued to swell when he was on his feet and his left leg had shortened approximately two and one-half inches. By stipulation of counsel, his hospital, nurses and doctor bills were considered to be reasonable and in the sum of $5,773.37.

George Schultz was driving the truck with which the car driven by defendant collided. He had travelled on the toll road about three miles when the collision occurred. His trailer truck and the merchandise being transported weighed 30,000 pounds. He was driving in

280

a westerly direction in the outer (northerly) lane about 40 to 50 miles per hour just before the impact and had been driving about 45 to 50 miles per hour for about a mile and one-half before the collision. His speed was within the legal limits.

After the impact, the defendant's Chevrolet and the trailer truck slid about 425 feet. When Schultz got out of the truck the front of defendant's car was still pinned underneath the rear end of the trailer up to within one and one-half feet of its windshield, and this front part of the car was completely demolished.

Schultz testified that at the time and place of the collision, the toll road was level and straight; that it was daylight—the sun was shining; and that he turned off his headlights before entering the toll road, when he stopped for coffee.

In reaching a determination of the validity of defendant's assertion that there was neither a pleading nor evidence to sustain the verdict, consideration must be given to the law applicable to these circumstances. Plaintiff's amended complaint, under the Guest Act (Ill Rev Stats 1963, c 95½, par 9–201), charges the defendant, as it must, with wilful and wanton misconduct, in that "knowing himself to be sleepy, being aware that his consciousness was being blunted by lack of sleep", said defendant did, "wilfully and wantonly continue to drive his automobile at a time when he knew that the plaintiff, . . . , was asleep, and defendant . . . , did, as a matter of fact fall asleep while driving his automobile and collided into the rear of a trailer truck;" or in the alternative, "the defendant, . . . , wilfully and wantonly drove his automobile while awake, into the rear of a moving trailer truck, colliding with said trailer truck."

■ Under the evidence above set forth, there can be no question about the propriety of the trial court in refusing to direct a verdict against plaintiff, or in

■■■

refusing to arrest the judgment, with reference to the allegation that defendant, while awake, drove his automobile into the rear of the trailer truck. Myers v. Krajefska, 8 Ill2d 322, 328, 329, 134 NE2d 277 (1956); Mower v. Williams, 402 Ill 486, 490, 84 NE2d 435 (1949); Schneiderman v. Interstate Transit Lines, 394 Ill 569, 583, 69 NE2d 293 (1946); Larson v. Fell, 55 Ill App2d 418, 424–426, 204 NE2d 475 (2nd Dist. 1965). Even if the conclusion to be drawn from the evidence was uncertain, as to defendant's being guilty of wilful and wanton conduct in driving into the rear of the trailer truck, while awake, so that fairminded men could draw different conclusions, a question of fact, to be decided by the jury, was presented. Turner v. Schaeffer, 30 Ill App2d 376, 390, 174 NE2d 690 (2nd Dist. 1961). Also see Zank v. Chicago, R. I. & P. R. Co., 17 Ill2d 473, 479, 480, 161 NE2d 848 (1959); Brown v. McColl, 36 Ill App2d 215, 218, 183 NE2d 541 (2nd Dist. 1962).

■ The propriety of the court's action with reference to the defendant continuing to drive when he knew plaintiff was asleep, and when he knew that he was sleepy and his consciousness blunted by lack of sleep, presents a more serious problem, but one which likewise must be resolved against defendant.

The evidence showed that defendant had slept but little during the past 48 hours. In his statement prior to the trial the defendant stated: "I must have been sound asleep, either sound asleep, or I didn't see the truck", yet at the trial, he testified that he saw the truck when it was 500 to 1000 yards away. If we take his statement—that he was sound asleep—as true, we then have a circumstance of the defendant driving, (even though he had slept but little during the past 48 hours and even though he had consumed six or seven beers between 1:00 a. m. and 4:00 a. m.) at a rate of speed sufficient to strike, with great force, the rear of

a truck travelling from 45 to 50 miles per hour in the same direction in the outer lane for westerly traffic on the toll road, at a place where the road was straight and level, and when no cars were travelling on the inner westbound traffic lane. (The evidence was conflicting with reference to whether it was then broad daylight.) Beyond doubt, the allegations of the amended complaint and the evidence adduced made up a triable issue for the jury. Turner v. Schaeffer, supra; Secrist v. Raffleson, 326 Ill App 489, 492, 493, 62 NE2d 36 (2nd Dist. 1945). Also see Zank v. Chicago, R. I. & P. R. Co., supra; Brown v. McColl, supra.

█ Section 43(2) of the Civil Practice Act provides:

> "When a party is in doubt as to which of two or more statements of fact is true, he may, regardless of consistency, state them in the alternative or hypothetically in the same or different counts or defenses, whether legal or equitable. A bad alternative does not affect a good one."

(Ill Rev Stats 1963, c 110, par 43(2)). Pursuant thereto, plaintiff could plead defendant's wilful and wanton conduct in the alternative and a bad alternative would not affect a good one. In the case at bar, it was for the jury to consider the evidence and determine whether it would support either of the charges of wilful and wanton conduct, alternatively alleged. See McCormick v. Kopmann, 23 Ill App2d 189, 161 NE2d 720 (3rd Dist. 1959).

█ This court reviewed the Illinois "sleep" cases, namely: Secrist v. Raffleson, 326 Ill App 489, 62 NE2d 36 (2nd Dist. 1945); Marks v. Marks, 308 Ill App 276, 31 NE2d 399 (1st Dist. 1941); and Barmann v. McConachie, 289 Ill App 196, 6 NE2d 918 (4th Dist. 1937) in Turner v. Schaeffer, 30 Ill App2d 376, 174 NE2d 690 (2nd Dist. 1961). In Turner the court cited and

quoted from 28 ALR2d 12, 25, and at pages 389 and 390 fairly stated the pertinent Illinois rule of law, as follows:

"Defendant's stated intentions as to his capacity to drive, must be weighed in the balance with his actions on that day, or even preceding days. One can be guilty of willful and wanton misconduct not only from an error of judgment, but from a failure to exercise judgment, as we have seen from our quotation from the Barmann case. Quite obviously in the Marks case, where the evidence was that defendant knew he was sleepy, and in the Barmann case too, the act of the defendant in continuing to drive was an error of judgment. But absent these manifestations of intention, the activities preceding sleep, such as a sustained period without sleep, strenuous activity, long hours of work, over indulgence in food and drink, even prior similar occurrences evidencing a congenital predisposition to fall suddenly to sleep, might call for the exercise of judgment, and the failure to do so, could evidence willful and wanton misconduct.

"If one omits to make a judgment, he is in no better position for exoneration, than one who makes a judgment, but makes it erroneously. Assuming that defendant did fall asleep, and assuming further that the more obvious warnings were absent, still, because of a lack of sleep, a long day at the factory, the lateness of the hour, the lack of food, and indeed the sleepiness of his partner, could it not be said, because he did not take heed of these facts, that he omitted to make a judgment, and conversely, that these facts behooved him to make one, independent of being jarred by some inward manifestation, such as nodding, or outward manifestation, such as a warn-

284

ing from others. Somewhere along the line, triers of the fact could properly conclude that note should have been taken by him, and self-inquiry made. They could also properly conclude otherwise. As was said in Lindroth v. Walgreen Co., 338 Ill App 364, 87 NE2d 307, 312 '. . . where uncertainty arises as to the inferences that may legitimately be drawn from the evidence so that fair-minded men may honestly draw different conclusions, the question is not one of the law, but one of fact to be settled by the jury.' "

Under these principles, the trial court properly submitted this case to the jury.

■ The defendant urges that the plaintiff was guilty of contributory wilful and wanton conduct in that he went to sleep. However, in Thompson v. Riemer, 283 Ill App 371, 376 (3rd Dist. 1936), the court held that the fact alone that the plaintiff was asleep in the rear seat of the car at the time of the accident, did not constitute contributory negligence as a matter of law, so as to preclude recovery. By analogy, we hold that, as a matter of law, the fact alone that plaintiff was asleep in the front seat of the car, did not constitute contributory wilful and wanton conduct on his part and bar recovery. Such fact, along with all other evidentiary facts, was properly considered by the jury in making this determination. Also see Zank v. Chicago, R. I & P. R. Co., supra, 483, et seq.

■ The defendant suggests, and offers numerous citations on the point, that the collision was an inevitable or unavoidable accident. The weakness of this contention lies in the facts of the case. They utterly fail to sustain such theory.

■ ■ Defendant also urges that the verdict was against the manifest weight of the evidence. To be against the manifest weight of the evidence requires

285

that an opposite conclusion be clearly evident. Larson v. Fell, 55 Ill App2d 418, 428, 204 NE2d 475 (2nd Dist. 1965); Borst v. Langsdale, 8 Ill App2d 88, 93, 130 NE 2d 520 (2nd Dist. 1955); Griggas v. Clauson, 6 Ill App 2d 412, 419, 128 NE2d 363 (2nd Dist. 1955). An opposite conclusion is not clearly apparent in the case at bar.

The defendant also urged that a statement of plaintiff's counsel constituted a judicial admission which negated wilful and wanton conduct on the part of defendant. After defendant rested, counsel for plaintiff indicated that he would call a rebuttal witness. In a colloquy between counsel for plaintiff and defendant and the court, plaintiff's counsel said: "This is a difficult decision. I don't know, there is nothing in the record about being tired—." Defendant seeks to parlay this remark into a judicial admission by plaintiff that defendant was not guilty of wilful and wanton conduct.

██ ██ In Deffler v. Loudenback, 233 Ill App 240, (1st Dist. 1924), at page 245, the court referred to Vol 5, Wigmore on Evidence, 2nd Ed, sec. 2588 re Judicial Admissions, where it is stated: "An express waiver, made in court or preparatory to trial, by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it." The trial court did not regard the remark as a judicial admission and evidently defendant's counsel did not, since he failed to raise the point at the time in the trial court. The remark was not a judicial admission, and further, such point cannot be raised for the first time in the reviewing court. Mc-

Millen v. Rydbom, 56 Ill App2d 14, 28, 205 NE2d 813 (2nd Dist. 1965).

██ Defendant charges error in the trial court's refusal to give certain of his instructions, including No. 21, which was IPI No. 12.01 drafted with reference to intoxication as contributory wilful and wanton conduct. Under the evidence of this case, the jury could draw various inferences from the evidence relative to the intoxication or sobriety of both plaintiff and defendant, but this instruction stressed only the intoxication of plaintiff.

██ ██ The Court gave IPI No. 14.01 and 14.02 which defined wilful and wanton conduct and contributory wilful and wanton conduct, and IPI No. 20.01 pertaining to the issues. This latter instruction set forth, among other things, that "plaintiff claims he was injured and sustained damage while free from wilful and wanton misconduct on his part" and that defendant denied this. The court also gave IPI No. 21.01 which correctly set forth the burden of the proof on the issues. These instructions adequately defined the standard of conduct required of both plaintiff and defendant. They were not in conflict with the rule of law that intoxication neither bars recovery nor relieves the intoxicated party from the duty of exercising the same care as a sober person. Wilcke v. Henrotin, 241 Ill 169, 173, 89 NE 329 (1909). It was not prejudicial error to refuse such instruction.

██ Defendant's instructions Nos. 22, 23, 24, 25 and 27 are abstract statements taken from parts of the opinion in Turner v. Schaeffer, supra. Typical of them are the following:

"No. 22. A person cannot be guilty of wilful and wanton misconduct if he is asleep or unconscious.

287

"No. 24. Driving while asleep, without more, is not wilful and wanton conduct."

These were not IPI instructions: they stated (some erroneously) abstract legal proportions without connecting them with the issues of the case. The trial court properly refused these instructions. Gillette v. City of Chicago, 396 Ill 619, 626, 72 NE2d 326 (1947); Cloudman v. Beffa, 7 Ill App2d 276, 281–283, 129 NE2d 286 (2nd Dist 1959).

■■ Defendant also states that the court erred in not giving his instruction No. 15, being IPI No. 20.01. The infirmity of this assertion is that the court gave IPI No. 20.01 as plaintiff's instruction No. 9. Defendant further charges that the court improperly refused his instruction No. 16, being IPI No. 30.01, 30.02, 30.03, 30.04, 30.05, 30.06, 30.07. However, the court gave plaintiff's instruction No. 16 which was IPI No. 30.01, 30.02, 30.04, 30.05, 30.06 and 30.07. Since defendant's instruction was broader than plaintiff's instruction No. 16 in that it included in plaintiff's measure of damages, the element of aggravation of a pre-existing ailment or condition, defendant could not be prejudiced by the giving of the more restrictive instruction. Consequently, it was not error to refuse this instruction and to give plaintiff's instruction No. 16.

■■ Defendant also charges that the court erred in giving plaintiff's instructions 8, 9, 13, 14, 15 and 16. We have above approved plaintiff's instructions 9 and 16. Plaintiff offered no instruction numbered 15, but rather submitted two plaintiff's instructions numbered 14 and each was withdrawn and not given, as was plaintiff's instruction numbered 8. Plaintiff's instruction 13, was IPI Instruction 60.01 (Violation of Statute—Ill Rev Stats 1963, c 95½, par 146); there was evidence which would support a finding that the injury

complained of was proximately caused by the violation of the statute; it was properly given.

We find no merit in the alleged errors above enumerated, and others, which were charged and considered, but not discussed due to lack of substance. Accordingly, the judgment is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.